MCASKILL *v.* TOWNSHIP OF HANCOCK.

TOWNSHIPS — CONSTRUCTION OF DITCH — OVERFLOWING PRIVATE PROPERTY—LIABILITY.

> A township which negligently constructs a ditch along a highway, whereby the water is diverted from its original course and discharged upon private property, is liable for the damage caused thereby; there being no distinction in this respect between involuntary *quasi* corporations, such as townships, and municipal corporations proper.

Error to Houghton; Streeter, J. Submitted October 22, 1901. Decided December 10, 1901.

Case by Kenneth McAskill against the township of Hancock for the unlawful flooding of plaintiff's land. From a judgment for defendant on demurrer to the declaration, plaintiff brings error. Reversed.

*W. A. Burritt,* for appellant.

*J. T. Finnegan* ( *Chadbourne & Rees,* of counsel ), for appellee.

Moore, J.   The plaintiff commenced this suit by declaration reading as follows:

"For that whereas, heretofore, to wit, on the 1st day of January, A. D. 1896, and from that time down to the commencement of this suit, the said plaintiff was, and now is, the owner in fee, and has been in continuous possession, of lot No. 19, block No. 5, of the First addition of the village of Hancock, Houghton county, Michigan, according to the recorded plat thereof; that said premises are not subject to any extraordinary natural servitude, nor were said premises subject to overflow before the committing of the grievances by said defendant hereinafter mentioned.   The plaintiff further alleges that within the corporate limits of the township of Hancock, and north of the plaintiff's premises, there is a high elevation or hill, commonly known as the 'Quincy Hill;' that the said defendant, in the year 1896, and at the times of committing the grievances hereinafter mentioned, was in possession of and had control of the public streets and highways of said township of Hancock (upon said hill) for the purpose of building and repairing said streets, and for the purpose of constructing drains, ditches, and culverts upon and along said streets, and for the purpose of keeping said streets, drains, ditches, and culverts in a proper state of repair, and was subject to the provisions of section 1354, 3 How. Stat., being section 4104 of the Compiled Laws of 1897, and the following provisions of said chapter; and it therefore became and was the duty of the said defendant, in case it constructed drains, ditches, and culverts upon and along said public highways or streets (upon said hill), to so construct and maintain said drains, ditches, and culverts as not to divert and collect surface water and turn the same upon the close and premises of the said plaintiff, and thereby flood and subject said close and premises to unnatural servitude, and, if drains, ditches, and culverts were so constructed by the said defendant as to divert and collect surface water and turn the same upon the close and premises of the said plaintiff, it became and was the duty of the said defendant to so reconstruct or repair said drains, ditches, and culverts as to protect the premises of the said plaintiff against unnatural servitude.

" Yet the said defendant, wholly neglecting and not regarding its duty in the premises, did not, nor would it, so construct its drains, ditches, and culverts upon and along its public highways and streets as not to divert and collect surface water and overflow the premises of the said plaintiff; but, on the contrary, the said defendant, wholly disregarding its duty in the premises, then and there, to wit, in the years 1896 and 1897, carelessly, negligently, and improperly constructed a ditch upon and along Oak street, one of the public highways of said township, thereby diverting, carrying, and collecting the surface water to a point, to wit, 500 feet, north of plaintiff's premises, and by means thereof did carelessly, negligently, and improperly overflow and flood the close and premises of the said plaintiff with vast quantities of water, and washed upon said premises vast quantities of sand and stone in places, and washed out channels and dug great ditches upon and across said premises, and destroyed the trees, grass, and garden of the said plaintiff, and caused the said plaintiff great damage and expense in endeavoring to repair said premises, and great inconvenience and damage to his house and habitation; and the plaintiff also alleges that the damage to said premises is permanent and irreparable, in all to the plaintiff's damage one thousand dollars ($1,000).

" The plaintiff also alleges that the said defendant, in the years 1896 and 1897, filled a culvert which was situated at the turn of the Quincy road, near Oak street, thereby diverting the water from its original course, and thereby turning the water into the ditch on Oak street, and thereby carrying and collecting said water at a point, to wit, 500 feet, north of the plaintiff's premises, and by means thereof cast the water upon the plaintiff's premises, and carelessly, negligently, and improperly overflowed and flooded the close and premises of the said plaintiff with vast quantities of water, and washed upon said premises vast quantities of sand and stone in places, and washed out channels and dug great ditches upon and across said premises, and destroyed the trees, grass, and garden of the said plaintiff, and caused the said plaintiff great damage and expense in endeavoring to repair said premises, and great inconvenience and damage to his house and habitation, which said injuries to said premises the plaintiff alleges to be permanent and irreparable, in all to the plaintiff's damage one thousand dollars ($1,000)."

The defendant demurred to this declaration, which demurrer was sustained.   The case is brought here by the plaintiff, who claims the declaration states a cause of action.

It is the contention of the defendant that, as a matter of law, a township cannot be held liable in its corporate capacity for such wrongs as are stated in the declaration at common law, and, as it is not made so by statute, there is no liability; citing 2 Dill. Mun. Corp. § 961 (761); *Commissioners of Highways of Township of Niles* v. *Martin*, 4 Mich. 557 (69 Am. Dec. 333); *Township of Leoni* v. *Taylor*, 20 Mich. 148; and *City of Detroit* v. *Blackeby*, 21 Mich. 84 (4 Am. Rep. 450).   It is insisted that, while there may be a liability on the part of towns and cities specially chartered or voluntarily organized under general acts, there would be no such liability on the part of *quasi* corporations, such as townships, school districts, and counties, as these exist in this State.

The cases cited above were all cases where damages were claimed for some defect in the highway or in bridges caused by the neglect of the township or city, and it was held that, in the absence of a liability created by statute, there was no liability.   The headnote to *City of Detroit* v. *Blackeby*, which is a fair statement of that branch of the opinion, reads as follows:

"The streets of Detroit are public highways, like all other roads.   The duty of keeping them in repair is a duty to the public, not to private individuals, the mere neglect of which is a nonfeasance only, and for an injury resulting from such neglect no action arises.   In this respect there is no distinction between the liability of cities and that of towns and counties."

In that opinion it was said:

"It has been held that corporations may be liable to suit for positive mischief produced by their active misconduct, and not from mere errors of judgment.   And, while the application of this rule may have been of doubtful correctness in some cases, the rule itself is at least intelligible, and will cover many decisions.   It was substantially upon this principle that the case of *City of Detroit* v. *Corey*,

9 Mich. 165 (80 Am. Dec. 78), was rested by the judges who concurred in the conclusion. *Thayer* v. *City of Boston*, 19 Pick. 511 (31 Am. Dec. 157), was a case of this kind, involving a direct encroachment on private property. *Rochester White Lead Co.* v. *City of Rochester*, 3 N. Y. 465 (53 Am. Dec. 316), where a natural water-course was narrowed and obstructed by a culvert entirely unfit for its purpose, and not planned by a competent engineer, is put upon this ground in the decision of *Hickok* v. *Village of Plattsburg*, 16 N. Y. 161. *Lee* v. *Village of Sandy Hill*, 40 N. Y. 442, involved a direct trespass."

In 2 Dill. Mun. Corp. §§ 1041, 1042 (799), it is said:

"It is clear that there is no liability on the part of a municipal corporation for not exercising the discretionary or legislative powers it may possess to improve streets, and, as part of such improvement, to construct gutters, or provide other means of drainage for surface waters, so as to prevent them from flowing upon the adjoining lots. And, even when the work of grading the streets has been entered upon, there is not, ordinarily, if ever, any liability to the adjoining owner arising merely from the nonaction of the corporation in not providing means for keeping surface waters from property situate below the established grade of the street. There are, indeed, cases which go further, and assert that there is no such liability where, in making improvements upon streets or elsewhere, authorized by law, surface waters are purposely turned from one's own land to that of another,—from the street directly upon the adjacent property owner.

"We agree to the doctrine that the municipality is not bound to protect from surface water those who may be so unfortunate as to own property below the level of the street; nor is the duty a perfect one, to adopt a system or mode of drainage which will have this effect; and, if one be adopted, there is in general no liability except as to ministerial duties in connection therewith. It is possible there may be no middle ground; but we are unable to assent to the doctrine that by reason of their control over streets, and the power to grade and improve them, the corporate authorities have the absolute and unconditional legal right intentionally to divert the water therefrom, as a mode of protecting the streets, and to discharge it by artificial means, in increased quantities, and with collected

force and destructiveness, upon the property, perhaps improved and occupied, of the adjoining owner."

In the late case of *Morley* v. *Village of Buchanan*, 124 Mich. 128 (82 N. W. 802), the court used the following language:

. "It is the claim of counsel for defendant that, under the village act, the village had authority to determine and establish the grade of streets, and to grade and otherwise improve and repair the same, and to establish and construct sewers and drains whenever and wherever necessary, and of such dimensions and materials as might be thought proper. 1 How. Stat. §§ 2861, 2870. It was, however, held in *Defer* v. *City of Detroit*, 67 Mich. 346 (34 N. W. 680), that, when the plan adopted by a municipal corporation in constructing a public improvement must necessarily cause an injury to private property equivalent to some appropriation of the enjoyment thereof to which the owner is entitled, the municipality is liable. In that case the act complained of was in raising the grade at which the Franklin-street sewer entered and connected with Riopelle-street sewer, by means of which the waters in the sewer were set back upon plaintiff's premises. It was held in that case that the declaration stated a cause of action. In *Rice* v. *City of Flint*, 67 Mich. 401 (34 N. W. 719), the declaration charged, in substance, that the city raised the grade of a street so as to dam up and set back the water in the gutter in front of plaintiff's property, causing the water to overflow and discharge into and upon his premises, to his injury. It was held that the declaration stated a cause of actionable negligence, and it was said, 'A city has no more right to invade or cause the invasion of private property than an individual.' See the cases there cited."

We think these cases control the case under discussion. See, also, *Gilman* v. *Town of Laconia*, 55 N. H. 130 (20 Am. Rep. 175). The demurrer should have been overruled.

The case is reversed, and the defendant is given 15 days in which to interpose a plea.

Montgomery, C. J., Hooker and Grant, JJ., concurred. Long, J., did not sit.