TOWNSHIP OF BLENDON *v.* DE JONGE.

1. WATERS AND WATERCOURSES—DAMS OR OBSTRUCTIONS—INJUNC-TIONS—MUNICIPAL CORPORATIONS.

Where complainant township failed to establish a prescriptive right to flood the lands of defendant with water from a highway discharged through a culvert under the road, and it appeared that the natural course of drainage was down the highway, an injunction restraining the defendant from obstructing the flow of water across his farm was properly denied.

2. SAME.

Neither the public in the construction of highways nor private parties for the benefit of their real estate can be permitted to divert water from its natural course or flow, and upon the lands of an adjacent proprietor.

Appeal from Ottawa; Cross, J. Submitted April 16, 1914. (Docket No. 53.) Decided July 24, 1914.

Bill by the township of Blendon against Chris De Jonge for an injunction and other relief. From a decree for defendant, complainant appeals. Affirmed.

*Smedley, Linsey & Lillie,* for complainant.
*Diekema, Kollen & Ten Cate,* for defendant.

The opinion filed by the circuit judge in this case gives a clear understanding of the situation which gave rise to this controversy:

"The township of Blendon filed the bill of complaint in this cause to restrain the defendant Chris De Jonge from erecting and maintaining a dam or ridge along the east line of the land of the defendant, which obstructs the flow of the water that passes through a culvert in the highway on the east side of said lands of the defendant, and in the township of Blendon. The defendant is the owner of the north half of the northwest quarter of section 32, and also the north half of the northeast quarter of section 31, in said township. A public highway runs north and south along the east end of the north half of the northwest quarter of section 32. On the east side of this highway is located the Southwest Blendon drain. This drain commences at the northeast corner of section 32 and runs west one-half mile to the highway which is on the east side of defendant's land; thence south on the east side of said highway 80 rods; thence west along the south line of the lands of defendant 160 rods; thence south and west to its outlet. About 20 rods north from the south line of the lands of the defendant is a private drain of the defendants which is one mile long and has its outlet in the Bosch & Hultz drain. About 20 rods north of the eastern part of this first private drain is a second private drain extending some 80 rods west and thence south to the first private drain. Directly east of this second private drain the complainant at the request of the defendant, and with his assistance, constructed a culvert through the highway and through the Southwest Blendon drain. At the time this culvert was constructed the defendant also owned the 40 acres of land on the east side of the highway, and the culvert was constructed to enable the defendant to drain his lands. The culvert was constructed in 1898. After this culvert was constructed, other drains were constructed, which collected more water into the Southwest Blendon drain. The complainant permitted Mr. J. H.

Huyser to construct a culvert across the highway to empty more water into the Southwest Blendon drain. The Southwest Blendon drain was not kept cleaned out, and the result was that the drain became clogged, and the water from the public drain was forced through the culvert and upon the lands of the defendant, and his crops were ruined. At one time defendant filled the culvert with earth to prevent the water from coming through from the public drain and flooding his land. In the fall of 1911 he built a ridge or dam about as high as the roadbed of the highway, and extending north and south along the highway for 60 or 70 rods. This ridge prevents the water in the Southwest Blendon drain from flowing upon the lands of the defendant. There is no public drain that provides an outlet for the water that flows through the culvert from the Southwest Blendon drain, and the complainant has failed to establish a right by prescription to empty the water from the public drain through this culvert upon the lands of the defendant. The defendant had the right to erect the dam or ridge upon his lands to prevent the collecting of water by means of drains and culverts into the Southwest Blendon drain and draining the same upon the lands of the defendant. If it is desired to empty the water from this public drain through the culvert, a proper outlet must be provided. And the decision in this case in no manner prevents the proper authorities constructing a public drain from this culvert through this dam or ridge and across the lands of the defendant. The complainant having failed to make out a cause of action, the bill of complaint will be dismissed with costs against the complainant. A decree may be prepared accordingly."

KUHN, J. (*after stating the facts*). In our opinion, the important questions to determine from this record are the natural direction of the flow of waters along the highway in question, and, if it is found that the waters do not flow in their natural course, the reason therefor. It is the claim of the complainant that the natural course of these waters is through the culvert into the private drains of defendant and then westward into the Bosch & Hultz drain. Defendant con-

tends that the proper drainage is through the Southwest Blendon drain, and the reason that the water does not flow that way is that this drain has been neglected and has filled up, and the waters are thus prevented from following their natural course. The defendant testified with reference to this condition, as follows:

"Now, Mr. De Jonge, the water that comes through this bridge now upon your land and floods you out, that is water that comes from where?

"*A.* That comes through the bridge?

"*Q.* Yes.

"*A.* Well, that comes from the east side of the road.

"*Q.* Comes from the Southwest Blendon drain, doesn't it?

"*A.* Yes, from the Southwest Blendon drain.

"*Q.* And why does it run through the bridge, and why doesn't it follow the drain itself?

"*A.* Because that drain is obstructed with weeds and willows and hasn't been cleaned out in four years; it is in poor shape.

"*Q.* When that was cleaned out four years ago, did the water follow largely the Southwest Blendon drain and not come under through the bridge?

"*A.* It did.

"*Q.* And that time had no trouble with your water?

"*A.* No.

"*Q.* And if the Southwest Blendon drain were now again widened and cleaned out as it was four years ago, would you have any trouble with the water?

"*A.* No, when I started to build that dam the water was running partly through my private drain, about one-third, and about two-thirds through the Southwest drain. Then I drove in a stake to see how much damage it would do when I blocked up my private drain, and in the evening when they worked all day at it, the water didn't come up a quarter of an inch; it stayed right level with the stake. Then the water all had to go through the Southwest drain.

"*Q.* It had to go there when it couldn't go under through the bridge and over your land?

"*A.* Yes."

Complainant's witness Bowen testified as follows:

"There is a public drain lying along the south side of my 40 called the Southwest Blendon drain. It doesn't carry off the water because it is not wide enough. It is deep enough.

"*Q.* But not wide enough?

"*A.* The water cannot go away; it just fills up and stays that way.

"*Q.* It isn't cleaned out, is that the reason?

"*A.* No, just filled up and stayed that way.

"*Q.* Because there isn't enough fall, or what is it?

"*A.* No place where it can go to.

"*Q.* Because the sand has filled it in?

"*A.* No, it just stayed there, nice and clean; the water just stayed there.

"*Q.* What I am trying to find out why is it that the water from your land there doesn't go through the Southwest Blendon drain?

"*A.* Well, it can't.

"*Q.* Why not?

"*A.* There ain't no room for it; it don't want to go west.

"*Q.* It goes onto Chris De Jonge's land?

"*A.* That is just the only place.

"*Q.* That is west, isn't it?

"*A.* Yes, that is a little west.

"*Q.* If this Southwest Blendon drain was widened and cleaned out, wouldn't that take the water?

"*A.* Well, of course it would."

Mr. Fellows, the county drain commissioner, testified:

"These are private drains, two or three of them that run into the Southwest Blendon drain. It brings in oceans of sand from the fill and makes great bars and shuts up the flow of the Southwest drain. The water goes over the top onto Mr. De Jonge's land and down the Bosch & Hultz drain."

After the defendant built the ridge, no steps were taken to clean out the Southwest Blendon drain, but an attempt was made to change the private drain of the defendant into a public drain. To this the defendant objected unless the outlet of the Bosch & Hultz drain should be enlarged sufficiently to take care of the increased flow of water, and stated:

"*Q.* Would you be willing, if the outlet of the Hultz, the Bosch & Hultz drain is opened, to have your private drain made into a public one, so that Huyser and Bowens can get rid of their water?

"*A.* Yes, sir; if they widen the Hultz drain in proportion.

"*Q.* So as to get rid of the water?

"*A.* Yes."

A study of this record is convincing that if the Southwest Blendon drain were properly cleaned out the natural flow of the waters along the highway under ordinary conditions would be taken care of, and that unless this is done the waters are forced onto the defendant's land, where they have no sufficient outlet, which results in damage to the defendant. We agree with the circuit judge:

"That the complainant has failed to establish a right by prescription to empty the water from the public drain through this culvert upon the lands of the defendant."

Under these circumstances, neither the public, nor a private individual, where waters gather through neglect to take the proper steps to cause them to flow along their natural course, can turn the waters upon the lands of another, to his damage.

In *Elliott* v. *Carter,* 140 Mich. 303, 305 (103 N. W. 600), this court said:

"That neither the public, in constructing highways, nor private parties for the benefit of their own lands, can turn water from its natural course onto the lands of another, is well settled. 2 Farnham on Waters & Water Rights, 960; *McAskill* v. *Township of Hancock,* 129 Mich. 74 [88 N. W. 78], 55 L. R. A. 738); *Breen* v. *Hyde,* 130 Mich. 1 [89 N. W. 732], and authorities there cited; *Smith* v. *Township of Eaton,* 138 Mich. 511 [101 N. W. 661]."

The decree is affirmed, with costs to the defendant.

McALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.