ROBINSON v. TOWNSHIP OF WYOMING.

1. PROPERTY—TRESPASS—PUBLIC AUTHORITIES.
    The right of an individual to the occupation and enjoyment of his premises is exclusive and the public authorities have no more liberty to trespass upon it than has a private individual.

2. WATERS AND WATERCOURSES—ARTIFICIAL RESERVOIR—CARE REQUIRED.
    A person who collects water in an artificial reservoir has an obligation to use care proportioned to the danger of injury from the escape.

3. TRESPASS—PLEADING—ARTIFICIAL LAKE.
    Amended declaration, averring defendant township's duty to use reasonable means to maintain level of water in artificial park lake above level of plaintiff's nearby property and because of

---

Liability for intentional intrusions on land, see 1 Restatement, Torts, § 158 et seq.

failure to do so the waters broke away from insufficient barriers, inundated plaintiffs' property, short-circuited electrical wiring and caused fire destroying premises, alleged damage resulting from defendant's trespass.

4. Same—Negligence—Escape of Waters from Artificial Lake.
   In action against township for damages to plaintiffs' property because of failure to maintain reasonably sufficient barriers so as to keep level of ·artificial lake waters above level of plaintiffs' nearby property, it was unnecessary to aver or prove negligence on defendant's part in order to establish a *prima facie* case as negligence is not a necessary element of such cause of action.

5. Municipal Corporations—Negligence—Trespass.
   While generally a municipal corporation is not responsible for injuries caused· by the negligence of its employees engaged in governmental functions, where the injury to a plaintiff is the result of the direct act or trespass of the municipality, it is liable whether acting in a public or private capacity.

6. Waters and Watercourses—Surface Waters—Natural Course.
   Rule that surface waters may not be turned from natural course onto the lands of another applies equally to municipal corporations as well as to private individuals.

7. Same—Artificial Lake—Breakthrough of Embankment—Damages—Proximate Cause—Evidence.
   In action for damages to plaintiffs' property, evidence was sufficient to enable jury to find that defendant township had so constructed its park and artificial lake that the flooding of plaintiffs' property was a natural result from surplus water flowing out of the breakthrough in embankment at end of lake.

8. Townships—Artificial Lake in Park—Breakthrough in Embankment.
   Township *held,* liable for damages suffered by nearby property owners when surplus waters flowed out of breakthrough in embankment of artificial lake on township park property in spring of year.

9. Judgment—Torts—Indivisible. Action.
   In an action against a. tortfeasor the defendant is interested only in knowing that a judgment therein will relieve it from all liability for the consequences of its tort as the cause of action is indivisible.

10. Same—Torts—Insurance of Plaintiffs' Interest—Evidence.
    Where a cause of action is indivisible a defendant is not legally interested in knowing how the judgment against it is to be

divided, or whether the contract providing for its division is or is not legally executed, hence the exclusion of testimony as to insurance of plaintiffs' interest was proper (3 Comp. Laws 1929, § 14040).

11. PARTIES—TORTS—INDIVISIBLE    ACTION—SUBROGATION—ASSIGNMENT—EVIDENCE.

While it is permissible to join together as parties plaintiff in an action against a tortfeasor both the injured party and his insurer who has been subrogated or been assigned a part interest, it is not necessary to establish by evidence that the insurer has acquired an interest in the cause of action as there can be only one recovery and the defendant has no particular interest in the division of the amount recovered (3 Comp. Laws 1929, § 14040).

12. NEW TRIAL—INADEQUATE VERDICT—EVIDENCE.

Denial of partial new trial because of alleged inadequacy of verdict was not error where there was evidence to support verdict.

Appeal from Kent; Souter (Dale), J. Submitted April 5, 1945. (Docket No. 44, Calendar No. 42,925.) Decided June 29, 1945.

Separate actions by Leonard C. Robinson, his wife and others and by Leonard C. Robinson, doing business as Robinson Cartage Company, and others against the Township of Wyoming, Kent County, for damages to property by fire caused when defendant's dam broke. Cases consolidated. Verdict and judgment for plaintiffs. Defendant appeals. Affirmed.

*Robert S. Tubbs (Denley I. Priest* and *Robert P. Scholte,* of counsel), for plaintiffs.

*Carmody, Geib & Walsh (John D. B. Luyendyk,* of counsel), for defendant.

SHARPE, J. This is an appeal from consolidated causes of action for damages growing out of the

destruction of plaintiff Robinsons' premises and contents by fire on March 25, 1943.

The material facts are not in dispute. It appears that defendant, township of Wyoming, is a municipal corporation in Kent county. In 1937, it acquired a piece of property consisting of approximately 57 acres for a public park. The previous owner of this property had removed the gravel. The township improved the property by grading it and establishing drives and roads. As the gravel was removed, a small lake, now known as LaMar Lake, gradually formed. It ran almost the entire length of the present park site along the westerly boundary, covering an area of about six acres.

In the process of excavating at the western end of the present park site, the gravel company found that water interfered with its operations and, as a result, a dam was made at the north end of the lake, bringing the ground level at that point up to approximately its original grade for the purpose of holding the water back to prevent it from running into an underpass. At the same time a drain was installed in the north end of the lake for the purpose of keeping the gravel and sand from washing onto the railroad tracks in the underpass.

In the plans for improving the site for a park, the lake was left in much the same condition as it was when the township purchased the acreage, except that its banks were sloped and the shore line was graded and levelled off to facilitate the use of the lake for bathing. The project was completed in 1940 and opened for public use. In recent years, the lake has had a tendency to rise considerably in the spring and fall of the year. In the spring of 1942, the lake threatened to overflow its banks at the northwest corner. In order to prevent this, the township arranged for the building of a dam around the northwest shore. This bank was constructed

by hauling in dirt and sand. During the early spring of 1943, the township engineer visited the site of the dam periodically to inspect it. On March 23d he observed that the top of the dam was approximately 12 inches above the water level in the lake. He again inspected the dam the following day and noted that the water had not risen more than a fraction of an inch above what it was the previous day.

About noon on March 25, 1943, the township engineer was notified that the water had broken through the dam and was flooding the adjacent area. When he arrived at the dam he noted that the water had washed out a section of the dam about 15 feet wide and the water was flowing in a westerly direction. At this time the water had flooded the rear of the premises of John Van Beek, whose property lies opposite the point of the break in the dam. The water continued to flow and soon reached the property owned by plaintiffs Leonard C. Robinson and wife which lies west of the Van Beek property.

Shortly after the water reached the Robinsons' property, their garage was seen to be on fire. The garage building was of cement block construction with a wooden, peaked roof. It had been built originally in 1928. Later two additions were added. The front part of the building was used for an office and the storage of trucks. There were several oil drums in the garage containing fuel oil used in a Diesel motor. There was also located in the garage a drum containing kerosene. As a result of the fire the garage and much of its contents were destroyed.

Leonard C. Robinson and wife and the Boston Insurance Company brought an action against the township for loss of the building. Leonard C. Robinson, doing business as Robinson Cartage Company, Vigilant Insurance Company, and other insurance companies brought an action against the

township for loss of personal property on the Robinsons' premises. Plaintiffs each filed a declaration on commencement of their actions which were later amended. In the amended declarations they alleged:

"8. That for several weeks prior to March 25, 1943, plaintiffs and others had warned the proper officers of the defendant that the waters of LaMar lake were accumulating in dangerous proportions and that they would overflow and damage the property of the plaintiffs; that on several occasions during the three weeks prior to March 25, 1943, the officers of the defendants visited the scene, and on one or two occasions, dumped a load of sand or gravel along the easterly side of Roys avenue to keep the waters of LaMar lake from flowing across Roys avenue and onto the property of the plaintiffs; that all of said attempts were half-hearted and futile and the defendant well knew that the small amounts of sand and gravel could not withhold a body of water of such vast proportions as LaMar lake, or said officers should have known such fact in the exercise of reasonable discretion.

"9. That at all times prior to and including March 25, 1943, it was the duty of the defendant to so construct and operate its park and impound the waters thus artificially collected in such manner that they would not be a nuisance and would not trespass upon and damage the property of the plaintiffs; that it was the duty of the defendant to plan and construct a culvert or system of culverts which would effectively drain away the accumulation of surface and subterranean waters reasonably expected to accumulate in LaMar lake so they would not be cast in large and unnatural quantities upon the land of the plaintiffs; and it became and was the duty of the defendant to prevent, by all reasonable means, the artificial creation of a dangerous body of water at a level above the level of plaintiffs' property,

and the sudden discharge thereof in large and unnatural quantities upon plaintiffs' property.

"10. That the defendant, disregarding its duties, wholly failed and neglected to keep the waters of LaMar Lake confined to its own premises, or properly drained away by suitable culverts, and, on March 25, 1943, without any act on the part of any of plaintiffs which in any manner contributed thereto, the waters of LaMar lake broke away from the insufficient barriers which had been erected along Roys avenue by the defendant and flowed in large quantities across Roys avenue, trespassing upon and inundating the property of plaintiffs to a depth of about two feet with muddy water causing certain electrical wiring leading to appliances installed in and on the premises to develop a resistance or to short-circuit or arc in such a manner as to set fire to plaintiffs' building * * * that all of said property was destroyed by the acts of trespass by the defendant and without any fault or negligence on the part of the plaintiffs, or any of them, which contributed in any way thereto."

Prior to the filing of amended declarations, defendant township filed a motion to dismiss plaintiffs' declarations for the following reason:

"That the basis upon which the plaintiffs' suit is brought is the negligence of said defendant and its officers and employees in the maintenance and operation of a public park, and such negligence is not a proper basis for a suit for damages resulting therefrom because the defendant is a municipal corporation and cannot be sued for the negligence of its officers and agents in the performance of its governmental functions."

The trial court denied the motion to dismiss, quoting as authority therefor *Ashley* v. *City of Port Huron,* 35 Mich. 296, 301 (24 Am. Rep. 552), where it is said:

"It is very manifest from this reference to authorities, that they recognize in municipal corporations no exemption from responsibility where the injury an individual has received is a direct injury accomplished by a corporate act which is in the nature of a trespass upon him."

Thereafter, amended declarations were filed in each case and by stipulation the causes were consolidated for trial. The causes were tried before a jury and a verdict was returned by them in favor of plaintiffs in the sum of $16,800.

Following the verdict, defendant made a motion for judgment *non obstante veredicto* based upon the following reasons:

"That at the close of the plaintiff's proofs they had failed to establish by any proof whatsoever the right of the plaintiffs (insurance companies) * ' * * to a judgment against the defendant. The plaintiffs alleged in their declaration that said insurance company plaintiffs are subrogated to the rights of the plaintiffs, Robinsons, and that for that reason are entitled to participate with the plaintiffs, Robinsons, in these suits, but there was not any attempt on the part of the plaintiffs to offer any proof of such subrogation, and for that reason they had no standing in court at the close of the plaintiff's proofs.

"The defendant is a municipal corporation and as such has an immunity from liability for damages resulting from the torts of its officers and agents, and for that reason the plaintiffs had failed to make a case against the defendant at the close of their proofs because the claim for damages is based solely upon damages resulting from the tort of the defendant's agents and officers in the improvement and maintenance of LaMar park and LaMar lake."

Thereafter, defendant township filed a motion for a new trial because the court failed to instruct the

jury on negligence and contributory negligence as well as the law of proximate cause as requested. Plaintiff filed a motion for a partial new trial pursuant to Court Rule No. 47, § 2 (1933), alleging that the verdict of the jury was inadequate and not in harmony with the undisputed evidence submitted in the cause. The trial court denied all motions.

Defendant appeals and urges that under the facts in this case, it was necessary for plaintiffs to allege and prove negligence in order to establish a *prima facie* case.

The amended declaration filed by plaintiffs alleges that plaintiffs, Robinson and wife, are the owners of certain real estate; that east of such property, the township of Wyoming owns and operates a park in which is an artificial lake known as LaMar lake; that prior to March 25, 1943, the township had not installed or constructed any culvert or other means by which the waters of the lake could be drained away; that water collected in the lake and was allowed to accumulate in vast quantities until it became a menace to adjoining property owners; that prior to the assumption of control of the gravel pit property an artificial drain took care of the surface waters in said vicinity; that after the lake was constructed, the artificial drain was permitted to become clogged and useless; that for some time prior to March 25, 1943, the township officers had been warned that the waters in the lake were accumulating in dangerous proportions; that it was the duty of the township to construct and operate its park and lake so that they would not become a nuisance and would not trespass upon and damage the property of plaintiffs; and that defendant township disregarding its duties failed and neglected to keep the waters in said lake confined to its own premises.

In *Ashley* v. *City of Port Huron, supra,* 301, we said:

"It is very manifest from this reference to authorities, that they recognize in municipal corporations no exemption from responsibility where the injury an individual has received is a direct injury accomplished by a corporate act which is in the nature of a trespass upon him. The right of an individual to the occupation and enjoyment of his premises is exclusive, and the public authorities have no more liberty to trespass upon it than has a private individual. If the corporation send people with picks and spades to cut a street through it without first acquiring the right of way, it is liable for a tort; but it is no more liable under such circumstances than it is when it pours upon his land a flood of water by a public sewer so constructed that the flooding must be a necessary result. The one is no more unjustifiable, and no more an actionable wrong, than the other. Each is a trespass, and in each instance the city exceeds its lawful jurisdiction. A municipal charter never gives and never could give authority to appropriate the freehold of a citizen without compensation, whether it be done through an actual taking of it for streets or buildings, or by flooding it so as to interfere with the owner's possession. His property right is appropriated in the one case as much as in the other."

In *Scott* v. *Longwell,* 139 Mich. 12 (5 Ann. Cas. 679), we said:

"According to all authorities, there is imposed upon a person who collects water in an artificial reservoir an obligation to use care 'proportioned to the danger of injury from the escape.' See Cooley on Torts (2d Ed.), p. 680."

In our opinion the amended declaration alleges that the damage resulted from defendant's trespass. In such case evidence of negligence on the part of the agents and servants of the defendant was not necessary in order to establish a *prima facie* case.

Negligence is not a necessary element of this cause of action.

Defendant also urges that the township as a municipal corporation while performing a governmental function in the construction and maintenance of LaMar park is immune from liability for the trespass or negligence of its officers or agents.

The general rule is that a municipality is not responsible for injuries caused by the negligence of its employees engaged in governmental functions. It is also the rule as was stated in *Ferris* v. *Board of Education of Detroit,* 122 Mich. 315:

"That municipal corporations are not generally held liable, under the common law, for negligent injuries to individuals arising from defective plans of construction of public works or failure to keep the same in repair; but it is contended that, where the injury is the result of the direct act or trespass of the municipality, it is liable, no matter whether acting in a public or private capacity. We are satisfied that counsel for plaintiff are right in this contention. The plaintiff had the right to the exclusive use and enjoyment of his property, and the defendant had no more right to erect a building in such a manner that the ice and snow would inevitably slide from the roof, and be precipitated upon the plaintiff's premises, than it would have to accumulate water upon its own premises, and then permit it to flow in a body upon his premises. It has been many times held in this court that a city has no more right to invade, or cause the invasion of, private property, than an individual."

In *Elliott* v. *Carter,* 140 Mich. 303, we said:

"That neither the public, in constructing highways, nor private parties for the benefit of their own lands, can turn water from its natural course onto the lands of another, is well settled."

In *Township of Blendon* v. *De Jonge*, 181 Mich. 575, we held that a township could not turn water upon the land of a private individual to his damage.

In 38 Am. Jur. p. 352, it is said:

"On the other hand, the universal rule that one person cannot change the course of drainage and cast upon the land of another water which naturally would not have flowed there applies equally to municipal corporations, so that a municipal corporation incurs the same liability as an individual when it damages the land of another person by casting thereon water which would not have flowed there naturally, either by changing the course of drainage, by causing surface water to accumulate and flow onto the land of another person in greater quantities than would naturally have flowed there, or by collecting surface water into artificial channels in such quantities that it overflows onto adjoining property."

From the evidence in the case at bar the jury could find that the township of Wyoming had so constructed its park and lake that the flooding of plaintiffs' property was a natural result from surplus water flowing out of the breakthrough in the embankment. The facts in this case take it out of the general rule that a municipality is not liable for the negligence of its officers and agents.

It is also urged that plaintiffs failed to prove that the insurance companies have acquired an interest in the causes of action. Defendant bases its claim upon 3 Comp. Laws 1929, § 14010 (Stat. Ann. § 27.654), which provides in part as follows:

"*Provided, further,* That where an assignment of a part of a cause of action in tort has been made by an insured to an insurer, both assignor and assignee may join in an action on such claim, and a joint judg-

ment shall be rendered for all the damages to which either or both may be entitled."

In *Union Ice Co.* v. *Railway Co.*, 178 Mich. 346, we said:

"We can readily appreciate the fact that it might be of advantage to defendant to be able to show that certain insurance companies would participate in any judgment which might be rendered against it, but we are of the opinion that it had no legal right to do so. Its tort (if one was committed) was against this plaintiff, and the right of action which grew out of the tort was one and indivisible. *Continental Ins. Co.* v. *H. M. Loud & Sons Lumber Co.*, 93 Mich. 139 (32 Am. St. Rep. 494). The plaintiff undoubtedly was possessed of the substantive right and was the proper party to bring the suit. Had it done so, without executing the various subrogation contracts, it would still necessarily have acted in the capacity of a trustee, as regards the judgment, for the benefit of the insurance companies, in accordance with the terms of the policy contract. The relation would be implied by law. *Federal Ins. Co.* v. *Detroit Fire & Marine Insurance Co.*, 121 C. C. A. 58 (202 Fed. 648); *Southern Bell Telephone & Telegraph Co.* v. *Watts*, 13 C. C. A. 579 (66 Fed. 460); *Phoenix Insurance Co.* v. *Erie & Western Transportation Co.*, 117 U. S. 312 (6 Sup. Ct. 1176, 29 L. Ed. 873). The defendant is interested only in knowing that a judgment, in the suit brought, will relieve it from all liability for the consequences of its tort. As we have seen, the cause of action is indivisible. No one of the insurance companies could bring an action in its own behalf even in the name of the insured. We conclude that the court properly ruled that the entire question of insurance was immaterial to the issue, and that the defendant is not legally interested in knowing how the judgment against it shall be divided, or whether the contract providing for its division is or is not legally executed."

In *Copeland* v. *Railway Co.*, 249 Mich. 115, we again had occasion to discuss this problem. We there said:

"The question has been presented to this court a number of times in recent years, and the uncertainty which arose as to the proper procedure to pursue resulted in the enactment of Act No. 271, Pub. Acts 1929,* which distinctly provides that the insurance company, in the event of subrogation and assignment, may be joined as a party plaintiff."

In the case at bar plaintiffs Robinson and plaintiffs insurance companies have joined together as parties plaintiff to begin the instant suit. Under the above authorities it is not necessary to establish by evidence that the insurance companies have acquired an interest in the cause of action. There can be only one recovery against defendant township. The township should have no particular interest in the division of the amount recovered.

We note that plaintiffs have submitted a motion for a partial new trial on the grounds that the verdict is inadequate. The jury had this question for consideration. There was evidence to support their verdict. The record is not convincing that they were in error.

The judgment is affirmed, with costs to plaintiffs.

STARR, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, BOYLES, and REID, JJ., concurred.

---

* 3 Comp. Laws 1929, § 14010 (Stat. Ann. § 27.654).—REPORTER.