Kelly, J.
(dissenting). The majority’s decision today overrules many years of Michigan jurisprudence interpreting the government tort liability act (GTLA). Its rationale for upsetting the well-reasoned precedent of this Court is that it brings the statute’s construction closer to the Legislature’s intent. I find this patently inaccurate.
Repeatedly, beginning with the decision in Ross v Consumers Power Co (On Rehearing),[1] this Court has construed the GTLA each time by scrutinizing the language and the purpose the Legislature articulated for it. Using a consistent approach, I conclude that the trespass-nuisance exception still exists and that it applies to municipal units of government. I would hold, as well, that the trespass-nuisance cause of action is constitutionally derived and unaffected by legislative action.
*701 I. INTERPRETATION OF THE GOVERNMENT TORT LIABILITY ACT
Whenever a court interprets a statute, it attempts to ascertain and fulfill the Legislature’s intent in passing it. Reardon v Dep’t of Mental Health, 430 Mich 398, 407; 424 NW2d 248 (1988). It seeks to identify the object of the statute and the harm it was designed to remedy. It endeavors to make a construction that is at once reasonable and analyzed so as best to accomplish the purposes of the statute. Marquis v Hartford Accident & Indemnity Co, 444 Mich 638; 513 NW2d 799 (1994). It construes the statute’s provisions not in isolation, but in context. Sun Valley Foods Co v Ward, 460 Mich 230; 596 NW2d 119 (1999).
Having applied these principles, I conclude, as did the Court in Hadfield v Oakland Co Drain Comm’r,[2] that if the Legislature had meant to abolish the trespass-nuisance exception, it would have stated so unequivocally.
The Legislature enacted the gtla in 1965 as a response to Williams v Detroit,[3] a decision in which this Court abrogated governmental immunity for municipalities. The Court was evenly divided concerning whether common-law governmental immunity existed. However, a majority agreed that municipal units of government are not immune from liability. Id. at 270. As a consequence of Williams, governmental entities in general retained their common-law immunity, while municipalities did not.
The title of the GTLA reads as follows:
*702 An act to make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments, officers, employees, and volunteers thereof, and members of certain boards, councils, and task forces when engaged in the exercise or discharge of a governmental function, for injuries to property and persons .... [MCL 691.1401 et seq., cited in Ross, supra at 593.]
The language is unequivocal. It expresses an intent to reestablish and codify a consistent and uniform form of governmental immunity, restoring the shield to municipal governments while in the exercise of a governmental function. After detailing some statutory exceptions to immunity, § 7 of the statute states:
Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed. [MCL 691.1407(1).]
In the cases before us today, the defendants argue that the word “state” in the second sentence of § 7 bars common-law exceptions to immunity for “all governmental agencies.” The majority goes further, holding that there were no common-law exceptions to even the state’s governmental immunity.[4]
*703 I disagree with the former and dissent from the latter. With respect to the former, Ross shows that the word “state” must be read consistently with the creation of a uniform system of immunity between municipal, local, and state governments. With respect to the latter, Hadfield confirmed that common-law exceptions existed that did survive the enactment of the GTLA.
A. BOSS v CONSUMERS POWER CO
The Ross decision dealt with the use of the word “state” in the GTLA. It held that its placement there presented a clear conflict with the purpose and title of the act. We faced the same dilemma over § 13[6] of the act. That section also used the word “state” to describe immunity:
The immunity of the state shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function .... [Former MCL 691.1413, as enacted by 1964 PA 170.]
The Court took the exception for “the state” and applied it to all governmental entities. It rejected the plain meaning of § 13 because, so read, it would have limited the proprietary function exception to the state and its agencies, departments, and commissions. The Court declined to find that restriction in the act because it was clearly not what the Legislature intended. It observed:
The governmental immunity act was intended to provide uniform liability and immunity to both state and local gov *704 emmental agencies. A strict “expressio unius est exclusio alteráis” reading of § 13 would destroy this uniformity. [Ross, supra at 614.]
The Court concluded that restricting § 13 to state government would run contrary to the goal and intent of the act, namely, a uniform system of liability and immunity. Moreover, it would abolish a longstanding exception to common-law immunity without the presence of any clear indications of legislative intent to do so. The Legislature codified this Court’s reading of § 13 of the act two years later by substituting the words “governmental agency” for the word “state.”
B. HADFIELD v OAKLAND CO DRAIN COMM’R
Two years after the Legislature effectively ratified Ross’s inteipretation of § 13, the Court decided Had-field, swpra. It found that the Legislature had used “state” in § 7, as it had in § 13, to mean “governmental agency.” The defendant in Hadfield argued that there were no common-law exceptions to governmental immunity under the statute.
Once again, the Court saw a conflict between the language of the statute, legislative intent, and an historic immunity exception. It concluded:
While the defendant’s arguments, advocating recognition of only statutory exceptions [to governmental immunity], are tempthigly simple and straightforward, they negate or ignore the second half of the legislative mandate of § 7. That section requires a continuation of the nuisance exception as formulated prior to the enactment of the governmental immunity act in 1964 .... [Id. at 149.]
The Court rejected the defendant’s argument using this reasoning: The second sentence of § 7 requires *705 that the state’s governmental immunity remain as it existed before July 1, 1965. The trespass-nuisance exception is strongly rooted in Michigan’s history. Nothing in the expressions of the Legislature indicated an intention to change it.
Today’s holding discards the conclusion in Hadfield by reinterpreting the second sentence of § 7 as an expansion of sovereign immunity. I strenuously disagree with this newfound purpose for the statute. Both the first sentence and the second sentence of § 7 use the words “tort liability.” Therefore, the type of liability and immunity the Legislature intended in the first sentence, it also intended in the second. According to the second sentence, the immunity from liability was not to be modified or expanded from what existed under the common law.
That reasoning, coupled with the intention to create a uniform system that we found in Ross, leads to one conclusion only: the Legislature meant to keep the state’s sovereign immunity where it was before July 1965, preventing its expansion or erosion, and to extend it uniformly to all other governmental entities. The common-law exception of trespass-nuisance thus would have survived.
C. LEGISLATIVE CONFIRMATION OF THE EXCEPTION
This year the Legislature enacted 2001 PA 222,[6] which added §§ 16 through 19 to the GTLA. MCL 691.1416 to 691.1419. The new act creates a mechanism for local governmental units to make compensa *706 tion when a defect in a sewer system causes the type of damage complained of here. Section 17 states:
Sections 16 to 19 abrogate common law exceptions, if any, to immunity for the overflow or backup of a sewage disposal system and provide the sole remedy for obtaining any form of relief for damages or physical injuries caused by a sewage disposal system event regardless of the legal theory. [MCL 691.1417(2).]
This language acknowledges that there are or, at least, may be common-law exceptions to governmental immunity. Given the intent and the timing of the act, it is apparent that the Legislature sought to prevent this Court from barring homeowner suits for damages.
2001 PA 222 is not alone in acknowledging the likely existence of common-law exceptions to governmental immunity. The Legislature also suggests their existence in § 7a of the gtla, which it passed in anticipation of Year 2000 computer failures.
Except as . . . provided in . . . Section 13, a political subdivision other than a municipal corporation engaged in the exercise or discharge of a governmental function is immune from liability in an action to recover damages resulting directly or indirectly from a computer failure, including, but not limited to ... an action based on section 2, 3, 5, 6, or 7. [MCL 691.1407a(l).]
This language indicates that an action to recover damages could be founded on § 7, a section that the majority believes is merely an assertion of state immunity. Section 7a of the GTLA and 2001 PA 222, in conjunction with the legislative intent described in Ross and Hadfield, are convincing evidence that the *707 Legislature did not abrogate common-law exceptions to immunity with § 7.
d. scope of title
The majority’s treatment of the Title-Object Clause[7] in the state constitution omits the significance of the title of the gtla as a key indicator of the Legislature’s intent.
Since Justice Cooley’s time, the clause has been applied to insure that adequate notice of new legislation be given to the general public and to those affected by it. Maki v East Tawas, 385 Mich 151, 156-158; 188 NW2d 593 (1971). To accomplish that end and to avoid deception and subterfuge, the clause requires that the scope of all legislation must fall within the scope of its title. Id., Kurtz v People, 33 Mich 279, 281 (1876). In addition, the clause requires that no law embrace more than one object, which must be expressed in the title.
The title of the gtla indicates a desire for a “uniform” system of liability. However, the majority’s construction of § 7 of the act accomplishes the opposite. The majority examines the differences between sovereign and governmental function immunity. It then concludes that, under its reading of the act, the system will be uniform as regards governmental function immunity. It finds that reaffirmation of sovereign immunity was incidental to the purpose of the act.
I disagree. If the first sentence of § 7 codifies a consistent governmental function immunity and the second reaffirms the state’s sovereign immunity, the sec *708 ond sentence falls outside the requirements of the Title-Object Clause. It is beyond the scope of the act’s title to “affirm” and codify the state’s common-law sovereign immunity, because the title refers only to an immunity enjoyed “when engaged in the discharge of governmental function.” MCL 691.1401 el seq. It is also beyond the act’s scope to allow different governmental immunity at different levels of government, as the majority finds it does.
The Ross and Hadfield decisions construed the act in a way that does not violate the Title-Object Clause. The Ross Court held that § 7 uses the expression “sovereign immunity” to include governmental functions. The expression was the tool by which the Legislature made all immunity uniform when a unit of government was performing a governmental function. Under this interpretation, the affirmation of sovereign immunity is germane to the creation of a uniform system of liability and immunity.
n. THE CONSTITUTIONAL BASIS FOR THE TRESPASS-NUISANCE EXCEPTION
Overlooked in the majority’s analysis of the Legislature’s intent is whether the trespass-nuisance exception enjoys a constitutional basis that defeats a statutory grant of governmental immunity. The majority treats the question as part of the plaintiffs’ taking claim that has yet to be adjudicated below.
I believe that it is preferable to address the question here, than wait for the matter to return to us. I believe that the common-law cause of action of trespass-nuisance is based on the Taking Clause of the *709 Michigan Constitution[8] and, as a consequence, statutory governmental immunity is not a defense. Li v Feldt (After Remand), 434 Mich 584, 594, n 10; 456 NW2d 55 (1990).
This Court in Buckeye Union Fire Ins Co v Michigan[9] acknowledged that the trespass-nuisance exception has a constitutional basis. Governmental immunity is not a defense to a constitutional tort claim, hence not to a claim based on trespass-nuisance. Thom v State Hwy Comm’r, 376 Mich 608, 628; 138 NW2d 322 (1965). The claim survives despite the fact that a statutory exception is not present because the law views the trespass or nuisance as an appropriation of property rights. Taylor, Googasian & Falk, Torts, § 7:252, p 7-86.
Not even the state can intrude on a citizen’s lawful possession of his property. Ashley v Port Huron, 35 Mich 296, 300 (1877); Herro v Chippewa Co Rd Comm’rs, 368 Mich 263, 272; 118 NW2d 271 (1962). And the protection of one’s property rights is not accomplished solely through actions for eminent domain. One may sue under the Taking Clause.
Also, actions under the clause are not limited to claims alleging an absolute conversion of property. Pearsall v Supervisors, 74 Mich 558; 42 NW 77 (1889). The action of a governmental agency may constitute a taking when it interferes with, damages, or destroys the property of an individual. Buckeye, supra at 642.
Since 1860, this Court has relied on the Taking Clause to support actions for trespass-nuisance. This Court has held many times that an invasion by gov *710 emment-controlled waters or sewage creates a cause of action against which governmental immunity is not a bar.[10]
On the basis of that long-established precedent, I would hold that a trespass-nuisance cause of action is constitutionally based and cannot be abrogated by the Legislature. The actions of the defendants here in flooding the plaintiffs’ basements constitute a “taking,” and damages, if proven, should be available. The basis for recovery is that the government deprived plaintiffs of the useful possession of property that they own. Gerzeski v Dep’t of State Hwys, 403 Mich 149, 170; 268 NW2d 525 (1978).
in. APPLICATION OP THE TRESPASS-NUISANCE EXCEPTION
Trespass-nuisance refers to a “trespass or interference with the use or enjoyment of land caused by a physical intrusion that is set in motion by the government or its agents and result[s] in personal or property damage.” Continental Paper & Supply Co v Detroit, 451 Mich 162, 164; 545 NW2d 657 (1996). Its elements are (1) the existence of a condition, such as a nuisance or a trespass, (2) a cause, such as a physical intrusion, and (3) causation or control, as by government. Id.
*711 In both cases before us, plaintiffs’ basements have been flooded by discarded water[11] that entered through drains hooked up to the municipal sewer system. The nature of this intrusion is similar to that found in CS&P, Inc v Midland, 229 Mich App 141, 145; 580 NW2d 468 (1998). There, water and sewage flowed into the plaintiff’s commercial suite from its floor drains and toilets. The Court of Appeals found that a trespass-nuisance cause of action existed. A cause should be found to exist in the cases before us, given the similarity of facts.
IV. CONCLUSION
The majority finds that the trespass-nuisance exception to governmental immunity ended in 1965 with passage of the gtla. I disagree with its conclusion because of subsequent judicial precedent upholding the exception and the lack of clear legislative intent to alter it. Moreover, any legislative attempt to remove the trespass-nuisance exception must be found invalid because a cause of action under the exception is constitutionally based in the Taking Clause.
In making its ruling, the majority discards longstanding and well-reasoned precedent of this Court in order to make its own interpretation of a Michigan statute.[12] It does so, stating an obligation to “shoulder [its] constitutional duty to act within [its] grant of authority and honor the intent of the Legislature . . .” *712 and to “rectify . . . [past] misconstruction of the statutory text.” Ante at 695.
But what must be apparent to all, when the rhetoric is stripped of its gloss, is that this Court is again ignoring its own past rulings. And, if each successive Court, believing its reading is correct and past readings wrong, rejects precedent, then the law will fluctuate from year to year, rendering our jurisprudence dangerously unstable.
The majority’s decision to limit its interpretation of the statute to prospective use is little more than a furnishing of salve to stem a hemorrhage. For all the above reasons, I respectfully dissent.
Cavanagh, J., concurred with Kelly, J.

 420 Mich 567; 363 NW2d 641 (1984).

 430 Mich 139, 148; 422 NW2d 205 (1988).

 364 Mich 231; 111 NW2d 1 (1961).

 The majority states that it makes no ruling with regard to the state’s immunity. However, when it tries to resolve a conflict between its interpretation of § 7 and the Title-Object Clause, Const 1963, art 4, § 24, it interprets § 7 as reserving exceptions only to the state’s sovereign immunity. Under that interpretation, no sentence in the GTLA reserves common-law exceptions to the governmental function immunity of the state. Therefore, while the state is not a party to this action, the majority opinion still carries serious implications for the state’s sovereign immunity.

 MCL 691.1413.

 The act was signed by the Governor after oral arguments were made in this case.

 Const 1963, art 4, § 24.

 Const 1963, art 10, § 2.

 383 Mich 630; 178 NW2d 476 (1970).

 See Pennoyer v Saginaw, 8 Mich 534 (1860); Sheldon v Kalamazoo, 24 Mich 383 (1872); Ashley, supra at 296; Defer v Detroit, 67 Mich 346, 349; 34 NW 680 (1887); Rice v Flint, 67 Mich 401, 403; 34 NW 719 (1887); Vanderlip v Grand Rapids, 73 Mich 522, 535; 41 NW 677 (1889); Seaman v Marshall, 116 Mich 327, 329-330; 74 NW 484 (1898); Ferris v Detroit Bd of Ed, 122 Mich 315, 318; 81 NW 98 (1899); McAskill v Hancock Twp, 129 Mich 74, 78-79; 88 NW 78 (1901); Onen v Herkimer, 172 Mich 593, 598; 138 NW 198 (1912); Attorney General v Grand Rapids, 175 Mich 503, 534; 141 NW 890 (1913); Donaldson v City of Marshall, 247 Mich 357, 359; 225 NW 529 (1929); Robinson v Wyoming Twp, 312 Mich 14, 23; 19 NW2d 469 (1945); Defnet v Detroit, 327 Mich 254, 258; 41 NW2d 539 (1950).

 Defendant disputes whether all the homes in question were flooded by debris-carrying sewage.

 See Nawrocki v Macomb Co Ed Comm, 463 Mich 143; 615 NW2d 702 (2000) (Kelly, J., concurring in part and dissenting in part).