ONEN *v.* HERKIMER.

1. MUNICIPAL CORPORATIONS—SEWERS—EQUITY.
   Municipal corporations may no more invade or injure private property than individuals.

2. SAME—EQUITY—IRREPARABLE INJURY—INJUNCTION.
   Irreparable injury warranting the issuance of an injunction was done by the appropriation of a part of complainant's land two or three feet wide and casting on her premises the sewage of a city of 5,000 inhabitants in the bed of a small stream or creek that passed through her farm.

3. APPEAL AND ERROR—INJUNCTION.
   Complainant was not bound to appeal from the order of the trial court denying her motion for a temporary injunction· the order was discretionary and not reviewable except for abuse of discretion.

172 MICH.—38.

4. Injunction—Cities—Sewers.

   In a suit for an injunction to restrain defendant city from cast-
   ing its sewage on complainant's farm, defendants acquired
   no rights, after having notice of complainant's objection, by
   proceeding with the construction of the proposed sewer and
   expending about $50,000 towards the project: but in grant-
   ing the final injunction a period of six months is allowed to .
   defendants to protect the rights of the municipality.

Appeal from Cass; Des Voignes, J. Submitted June
20, 1912. (Docket No. 93.) Decided November 8, 1912.

Bill by Anna F. Onen against George R. Herkimer,
mayor of the city of Dowagiac, and others, for an injunc-
tion to restrain the construction of a sewer. From a de-
cree for defendants, complainant appeals. Reversed.

*James H. Kinnane* and *Bernard J. Owen* (*George
W. Mechem,* of counsel), for complainant.

*Charles E. Sweet,* for defendants.

Complainant is the owner of an 80-acre farm, located
some distance outside the corporate limits of the city of
Dowagiac, through which runs a stream known as Do-
wagiac creek. Defendants are, respectively, mayor, alder-
men, members of the board of public works, of said city,
and contractors engaged in constructing a public sewer
for the use of the inhabitants of said city. The farm in
question has been in the possession of complainant or
members of her family since 1883. Complainant owns
the entire bed of the stream at the point where the sewer
enters.

Upon learning of the intention of the defendants to con-
struct said sewer and discharge its contents upon her land,
complainant caused notice to be given to defendants that
she would resist the right of the city to so locate its sewer,
and would enjoin such action. Defendants paid no atten-
tion to complainant's protest, but commenced the construc-
tion of the sewer.

The first work was done at the outlet, where a retaining wall was built in the bed of the stream. This wall is constructed upon land owned by the complainant for a distance of from two to three feet. As soon as the work was started, complainant, by her duly authorized agent, ordered the contractors to desist, and, no attention being given the warning, she filed her bill of complaint in this cause, in which she set up her ownership of the land upon which the retaining wall was being built, alleged the destruction of a valuable water power, averred irreparable injury if the trespass were permitted to continue, and prayed for an injunction and for general relief.

Upon the filing of this bill, an order to show cause why an injunction should not issue was made. Upon the hearing, several affidavits, filed by defendants, were read, the general tenor of which was that the proposed outlet for the sewer was the only practicable one; that a change in the route would involve a very large additional outlay and considerable delay in making the improvement; that the sewer was badly needed; and that to build it as proposed would cause no irreparable injury to complainant. The court thereupon declined to issue a preliminary injunction, the work proceeded, and the sewer is now completed, and is discharging all the sewage from a city of 5,000 inhabitants upon the lands of the complainant.

Upon the final hearing the court determined as follows:

"*First.* That complainant is the owner of the soil or bed of Dowagiac creek at the point whereon is built the retaining wall, and as is described at that part of the plans and specifications in Exhibit K, which comprehends a projection and emptying of said sewers into the Dowagiac creek.

"*Second.* That the elements of irreparable injury are wanting to this case; that the complainant can be fully compensated for all damages which may have been sustained by the acts of defendant.

"*Third.* That, under the general prayer for relief, the court finds it has jurisdiction, under this finding, to determine the question of the damage complainant may be entitled to recover by referring the same to a jury, or by

reference to one of the circuit court commissioners of this county to take proofs, or by a proof in open court, as complainant may elect.

"*Fourth.* That such election may be made in writing by the complainant not later than the first day of the February term of court next.

"*Fifth.* In the event that complainant shall fail to so elect, the court to make such further order or disposition of the matter as may seem meet and proper.

"*Sixth.* That defendant city, having had notice that complainant claimed title to the premises in dispute, and not having taken steps to acquire title, either by purchase or under the statute, is required to pay the costs of complainant to be hereafter taxed."

Complainant refused to elect as directed; whereupon the court made the following order:

"A finding of the court heretofore having been made in this cause, wherein certain contentions in said cause were determined, and the question of damage, if any, not having been heard or determined, and the complainant not having elected as in said opinion permitted to do, but standing mute: It is therefore hereby ordered that the matter of damages, if any be suffered by said complainant by reason of the alleged injuries complained of, be and the same heard, assessed and determined by a jury to act as an advisory of the court in determining the said damages, if any, as prescribed by the statute in such cases. That said cause be heard at the next April term of this court and placed on the calendar by the clerk of said court in the order of causes for hearing. Further, that a copy of this order be forwarded by the register in chancery of this court to James H. Kinnane, Esq., solicitor for complainant, and John Wooster, Esq., solicitor for defendants, on or before March 25, 1909.

"Dated, March 10, 1909."

To this order the complainant entered the following objections:

"The complainant hereby objects to the order heretofore entered in said cause, referring the matter of complainant's damages to a jury, for the reason that the court has no right to divest possession in advance of condemnation, or to legalize it, nor by its decree grant to the defendants rights which it cannot obtain under the power of

eminent domain; and for the further reason that the order permits the city of Dowagiac to go outside of its city limits and take the property of complainant and then pay to her such sum as a jury may award her; and for the further reason that the order is a justification of a trespass which was made after the city of Dowagiac had been fairly warned and notified that if they entered the creek at the point where they afterwards did enter, with their sewer, they would be trespassing upon the land of complainant; and the complainant hereby excepts to the order heretofore made in said cause, referring the matter of complainant's damages to a jury, for the reasons above stated."

Thereafter the court impaneled a jury. Complainant appearing specially filed a further protest to the proceeding and fully protected her rights by exceptions duly taken from time to time.

Defendants offered testimony tending to show that complainant had suffered no irreparable damage—in fact, no damage at all—and, the question being submitted to the jury, a verdict was returned in favor of defendants; complainant having offered no testimony upon the question of damages. A final decree was thereupon entered, dismissing complainant's bill of complaint, but with costs to complainant. From this decree complainant appeals.

Brooke, J. (*after stating the facts*). We find no authority, and we are referred to none, justifying the course pursued in this cause.

It is well settled that a municipality has no more right to invade or cause the invasion of private property than an individual. *Rice* v. *City of Flint*, 67 Mich. 401 (34 N. W. 719); *Defer* v. *City of Detroit*, 67 Mich. 346 (34 N. W. 680); *Seaman* v. *City of Marshall*, 116 Mich. 327 (74 N. W. 484); *Ferris* v. *Board of Education of Detroit*, 122 Mich. 315 (81 N. W. 98), and cases cited.

In the case of *Wilmarth* v. *Woodcock*, 58 Mich. 482 (25 N. W. 475), this court said:

" The defendant claims that the bill states no case for

equitable relief, *first*, because it appears by the bill that there is a dispute about the boundary; and, *second*, complainant has an adequate and complete remedy at law in an action of trespass or trespass upon the case, and because the injury does not appear to be irreparable, since she states the depreciation in the market value of her homestead will be at least $500, and it is not alleged that defendant is pecuniarily irresponsible and unable to respond in damages at least to that amount.   *   *   *   The bill states a case for equitable relief.   The continued invasion of complainant's rights of property by the maintenance of the projection of the cornice over her north line, constituting a permanent injury to and depreciation of her property, addresses itself to and calls in exercise the equitable jurisdiction of the court.   No remedy at law is adequate, owing to the uncertainty of the measure of damages, to afford complete compensation.   In one sense it is taking from complainant her property without condemnation, and without due process of law.   No person can be permitted to reach out and appropriate the property of another, and secure to himself the adverse enjoyment and use thereof, which, in a few years, will ripen into an absolute ownership by adverse possession.   *   *   *

" Irreparable injury, in the sense in which it is used in conferring jurisdiction upon courts of equity, does not mean that the injury complained of is incapable of being measured by a pecuniary standard."

What does constitute "irreparable injury," as the term is used in injunctive proceedings, has been the subject of much judicial comment and determination, which is not altogether harmonious.   One definition, given in 4 Words and Phrases, p. 3772, is as follows:

" ' Irreparable injury,' as used in the law of injunction, does not necessarily mean that the injury is beyond the possibility of compensation in damages, nor that it must be very great; and the fact that no actual damages can be proved, so that in an action at law the jury could award nominal damages only, often furnishes the very best reason why a court of equity should interfere in a case where a nuisance is a continuous one."

There is abundant authority supporting this view of the law; but it is unnecessary that we should here adopt it.

Whatever the true meaning of the term may be, we have
no hesitation in determining that the actual appropriation
of a strip of complainant's land from two to three feet wide,
and the casting upon her premises the entire sewage from
a city of 5,000 inhabitants, are such acts as peculiarly call
for the interference of a court of equity, and which, if per-
mitted to continue unrestrained, would unquestionably re-
sult in "irreparable injury" to complainant, within any
reasonable definition of that term.

Counsel for defendants contend that it was the duty of
complainant to have appealed from the order of the court
denying a temporary injunction. Ordinarily the granting
of a temporary injunction rests in the exercise of a sound
discretion by the trial judge. Such orders will not be re-
viewed, in the absence of an abuse of discretion.

It is urged here, as it was urged in the case of *Rhoades*.
v. *McNamara*, 135 Mich. 644 (98 N. W. 392), that com-
plainant should be remitted to her legal remedy. We
there said:

"Defendant insists that this decree should be reversed,
on the ground that the complainant, by recovering dam-
ages in a suit at law, has an adequate remedy. Defend-
ant persisted in using this road, contrary to complainant's
will, under an unfounded claim of right. Under these
circumstances, must the complainant quietly submit to
this invasion of his rights, and content himself with suing
for damages? Clearly not. He has a right to have this
continuing trespass stopped by an injunction. [Citing
cases.]"

See, also, *F. H. Wolf Brick Co.* v. *Lonyo*, 132 Mich.
162 (93 N. W. 251, 102 Am. St. Rep. 412); *Saginaw
Lumber, etc., Co.* v. *Giffore*, 145 Mich. 287 (108 N. W.
681, 116 Am. St. Rep. 297); *Detroit Mineral Bath Co.*
v. *Brewery Co.*, 151 Mich. 555 (115 N. W. 717); *Cullen*
v. *Ksiaszkiewicz*, 154 Mich. 627 (118 N. W. 496).

The action of the defendants, under the circumstances
disclosed by this record, was clearly without warrant of
law, and has resulted in placing the municipality in the

position of having expended upwards of $50,000 upon an enterprise the use of which, as now located, can and should be enjoined at the instance of complainant. This expenditure was made, practically in its entirety, after the city had received notice of complainant's rights, and in utter disregard thereof. Defendants proceeded advisedly, and are therefore in no position at this time to urge that it would be inequitable to grant to complainant the relief sought, because to do so would entail great loss and inconvenience upon the city.

The writ of injunction will issue as prayed; but it will not be made operative until the expiration of six months from the date of the entry of the decree of this court, in order that defendants may take such steps as seem advisable to protect the rights of the city. Complainant will recover the cost of both courts.

MOORE, C. J., and STEERE, McALVAY, STONE, OSTRANDER, and BIRD, JJ., concurred.