**Michigan Supreme Court
Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED APRIL 2, 2002**

ROBERT POHUTSKI, AMY POHUTSKI, KIERK
SANDERLIN, JOELLE SANDERLIN, ALAN
BULLION, ANTHONY CORBELL, PIETRO FUSCO,
NORMA FUSCO, KAYE GARDNER, BEVERLY
GARDNER, SHIRLEY KARAPETOFF, KAREN
KEREZI, BRIAN LaFUENTE, MICHELLE
LaFUENTE, RICHARD REFALKO, DOLORES
RAFALKO, WILLIAM SHAMUS, KATHLEEN
SHAMUS, and all others similarly
situated, a certified class,

    Plaintiffs-Appellees,

v                                   No.  116949

CITY OF ALLEN PARK, a Michigan Municipal
Corporation,

    Defendant-Appellant,

and

JOHN DOE REPRESENTATIVES, EMPLOYEES, OR
AGENTS OF THE CITY OF ALLEN PARK,
Jointly and Severally,

    Defendants.

_____

JEANNE JONES, JAMES JONES, ROGER TROST,
CAROL TROST, MIKE ROBERT, MIKE BARTHLOW,

CINDY BARTHLOW, SUSAN BROWN, KENNETH BROWN, SHIRLEY BRYANT, DAVID BURHANS, MAGDALENA CHAVEZ, WILLIAM CHUNN, IVAN GADJEV, FLORENCE GADJEV, REX GLASSON, BARBARA GLASSON, KEVIN HALL, SONIA HALL, LON HAMILTON, DIANE HAMILTON, WILLIAM HATTON, ELIZABETH HATTON, BILL HOFSESS, JOAN HOFSESS, JAMES HUBBLE, VIRGINIA HUBBLE, SOUREN MERUCCI, ENERA MERUCCI, MARY PEGORARO, PHIL PEGORARO, LUIS PERESSINI, MICHAL ALLEN PETERS, MIGUEL PRIETO, JILL PRIETO, TODD SNIDER, BETTY ZAHER, and all other similarly situated,

    Plaintiffs-Appellees,

v                    No. 117935

CITY OF FARMINGTON HILLS, a Michigan Municipal Corporation, and JOHN DOE REPRESENTATIVES, EMPLOYEES, OR AGENTS OF THE CITY OF FARMINGTON HILLS, Jointly and Severally,

    Defendants-Appellants.

_____

**BEFORE THE ENTIRE BENCH**

**CORRIGAN, C.J.**

In these consolidated cases, this Court once again faces whether the plain language of § 7 of the governmental tort liability act, MCL 691.1407, permits a trespass-nuisance exception to governmental immunity. Because the Legislature's definition of the word "state" is clear and unambiguous, we hold that it does not. In so holding, we overrule *Hadfield v Oakland Co Drain Comm'r*, 430 Mich 139; 422 NW2d 205 (1988), and other cases to the contrary. However, because we are

2

mindful of the effect our holding will have on the administration of justice, we conclude that limiting our holding to prospective application is appropriate.

## I
### FACTUAL BACKGROUND AND PROCEDURAL POSTURE

### A
#### POHUTSKI V ALLEN PARK

The city of Allen Park experienced a "ten year storm" on February 17 and 18, 1998. As a result of the high volume of rainfall, raw sewage from the city's sewer system backed up through plaintiffs' floor drains and into their basements. Plaintiffs filed a class action against the city of Allen Park for trespass, nuisance, trespass-nuisance, negligence, and unconstitutional taking in April 1998. Plaintiffs thereafter sought summary disposition of their trespass-nuisance claim under MCR 2.116(C)(10). Plaintiffs argued that defendant was liable as a matter of law under the doctrine of trespass-nuisance and that *Hadfield* barred governmental immunity as a defense. Defendant opposed the motion, arguing that a claim of trespass-nuisance required a showing of causation, and that it could not be held strictly liable solely on the basis of its ownership of the sewer system.

In a brief opinion rendered from the bench, Wayne Circuit Judge Edward Thomas granted plaintiffs' motion for partial summary disposition, holding that defendant was strictly

3

liable under the "trespass-nuisance" exception to governmental immunity. The Court of Appeals denied defendant's application for interlocutory review. Unpublished order, entered May 23, 2000 (Docket No. 222238).

## B
### JONES V FARMINGTON HILLS

On August 6, 1998, a "one hundred year storm" dropped approximately 4.6 inches of rain in less than six hours on the city of Farmington Hills, causing flooding throughout the community. As a result, raw sewage from defendants' sewer system traveled up through plaintiffs' floor drains and into their basements. Thirty-seven plaintiffs filed suit against the city of Farmington Hills, alleging claims of trespass, nuisance, trespass-nuisance, negligence, and unconstitutional taking. Plaintiffs moved for summary disposition of their trespass-nuisance claim, arguing that defendant was liable as a matter of law under *Hadfield*. Defendant opposed the motion and filed a counter motion for summary disposition, arguing that trespass-nuisance is not a strict liability tort and that plaintiffs had failed to establish causation or improper construction, engineering, or maintenance of its sewer system.

Oakland Circuit Judge Jessica Cooper denied defendants' motion and granted plaintiffs' motion for summary disposition of their trespass-nuisance claim. Judge Cooper held that trespass-nuisance was a recognized exception to the

4

governmental immunity statute, MCL 691.1407, and that no genuine issues of material fact existed regarding the exception's three elements: (1) a condition (nuisance or trespass), (2) cause (physical intrusion), and (3) causation or control (by government).

After the trial court denied reconsideration, defendant applied for leave to appeal in the Court of Appeals. The Court of Appeals granted the application and stayed the pending trial date. Plaintiffs then filed an emergency motion for rehearing. The Court of Appeals granted plaintiffs' motion, vacated its earlier order, and denied leave to appeal. Unpublished order, entered September 29, 2000 (Docket No. 227657).

## II
### STANDARD OF REVIEW

This Court reviews a trial court's decision to grant summary disposition de novo. *Wickens v Oakwood Healthcare System*, 465 Mich 53, 59; 631 NW2d 686 (2001). Questions of statutory interpretation are also reviewed de novo. *In re MCI Telecommunications*, 460 Mich 396, 413; 596 NW2d 164 (1999).

## III
### THE GOVERNMENTAL TORT LIABILITY ACT

From the time of Michigan's statehood, this Court's jurisprudence has recognized that the state, as sovereign, is immune from suit unless it consents, and that any

5

relinquishment of sovereign immunity must be strictly interpreted. *Manion v State Hwy Comm'r*, 303 Mich 1, 19; 5 NW2d 527 (1942). Sovereign immunity exists in Michigan because the state created the courts and so is not subject to them. *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 598; 363 NW2d 641 (1984).

It is important to distinguish between "sovereign immunity" and "governmental immunity":

> "[S]overeign" immunity and "governmental" immunity are not synonymous. True, they have been over the years used interchangeably in decisions, but a delineation may be helpful. *Sovereign* immunity is a specific term limited in its application to the State and to the departments, commissions, boards, institutions, and instrumentalities of the State. The reason is the State is the only sovereignty in our system of government, except as the States delegated part of their implicit sovereignty to the Federal government.
>
> * * *
>
> . . . Over the years, by judicial construction, this "sovereign" immunity has been transmogrified into "governmental" immunity and made applicable to the "inferior" divisions of government, *i.e.,* townships, school districts, villages, cities, and counties, but with an important distinction. These subdivisions of government enjoyed the immunity only when engaged in "governmental" as distinguished from "proprietary" functions. [*Myers v Genesee Auditor*, 375 Mich 1, 6, 8-9; 133 NW2d 190 (1965) (opinion of O'HARA, J.) (emphasis in original).]

In *Williams v Detroit*, 364 Mich 231, 250; 111 NW2d 1 (1961), Justice EDWARDS, joined by Justices T.M. KAVANAGH, SMITH,

6

and Souris, wrote: "From this date forward the judicial doctrine of governmental immunity from ordinary torts no longer exists in Michigan. In this case, we overrule preceding court-made law to the contrary." Justice Black, in his concurring opinion, stated that governmental immunity would be abolished only for municipalities, not the state and its subdivisions. *Id.* at 278.

As we noted in *Ross*, *supra* at 605, the Legislature enacted the governmental tort liability act in 1964 in reaction to *Williams'* abolition of common-law governmental immunity for municipalities, and in anticipation of a similar abrogation of immunity for counties, townships, and villages. The act "was intended to provide uniform liability and immunity to both state and local governmental agencies" when involved in a governmental function. *Id.* at 614. While there is agreement regarding the statute's intent, there has been much disagreement regarding its meaning.

When faced with questions of statutory interpretation, our obligation is to discern and give effect to the Legislature's intent as expressed in the words of the statute. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000); *Massey v Mandell*, 462 Mich 375, 379-380; 614 NW2d 70(2000). We give the words of a statute their plain and ordinary meaning, looking outside the statute to ascertain the

Legislature's intent only if the statutory language is ambiguous. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27, 528 NW2d 681 (1995). Where the language is unambiguous, "we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." *DiBenedetto*, *supra* at 402. Similarly, courts may not speculate about an unstated purpose where the unambiguous text plainly reflects the intent of the Legislature. *See Lansing v Lansing Twp*, 356 Mich 641, 649-650; 97 NW2d 804 (1959).

When parsing a statute, we presume every word is used for a purpose. As far as possible, we give effect to every clause and sentence. "The Court may not assume that the Legislature inadvertently made use of one word or phrase instead of another." *Robinson v Detroit*, 462 Mich 439, 459; 613 NW2d 307 (2000). Similarly, we should take care to avoid a construction that renders any part of the statute surplusage or nugatory. *In re MCI*, *supra* at 414.

With these principles of statutory construction in mind, we turn to the language of MCL 691.1407(1), which provides:

> Except as otherwise provided in this act, a *governmental agency* is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the *state* from tort liability as it existed before

8

July 1, 1965, which immunity is affirmed. [Emphasis added.]

"Governmental agency" and "state" are not synonymous, nor are they interchangeable.  Rather, each is precisely defined in the statute:

> (b) "Political subdivision" means a municipal corporation, county, county road commission, school district, community college district, port district, metropolitan district, or transportation authority or a combination of 2 or more of these when acting jointly; a district or authority authorized by law or formed by 1 or more political subdivisions; or an agency, department, court, board, or council of a political subdivision.
>
> (c) "State" means the state of Michigan and its agencies, departments, commissions, courts, boards, councils, and statutorily created task forces and includes every public university and college of the state, whether established as a constitutional corporation or otherwise.
>
> (d) "Governmental agency" means the state or a political subdivision. [MCL 691.1401.]

Under a plain reading of the statute, then, the first sentence of § 7 applies to both municipal corporations and the state, while the second sentence applies only to the state.  Despite the Legislature's clear and unambiguous use of the word "state" in the second sentence, this Court has struggled with its meaning.

A
*HADFIELD V OAKLAND CO DRAIN COMM'R*

In *Hadfield*, we considered whether the trespass-nuisance exception to governmental immunity, as a common-law tort-based

9

exception, survived the governmental tort liability act.  We concluded that recognition of the historic trespass-nuisance exception was required by the language of § 7.  In so holding, we strayed from the plain language of the statute, despite our claim that we "moved carefully to impose judicial construction only upon those terms in the statute that required interpretation."  *Id.* at 173.

*Hadfield* correctly interpreted the first sentence of § 7 because it focused on the plain language chosen by the Legislature:

> Taken alone, the first sentence of § 7 does support a narrow interpretation of the act, to preclude recognition of any nuisance exception. The Legislature's use of the word "tort" to describe the liability from which governmental agencies are to be held immune exemplifies the breadth of the intended immunity.  There is no doubt that nuisance is a tort and that liability for nuisance would be within the scope of statutory governmental immunity as expressed in the first sentence of § 7. [*Id.* at 147.]

*Hadfield* went astray, however, in interpreting the second sentence of § 7.  Ignoring the second sentence's express application only to the "state," the *Hadfield* Court held that "the second sentence of § 7 retains preexisting *governmental* immunity law except where provided otherwise in the act" and concluded that it required "a continuation of the nuisance exception as formulated prior to the enactment of the governmental immunity act in 1964, as amended by 1970 PA 155."

10

*Id.* at 147, 149 (emphasis added).

B

*LI v FELDT*

This Court reaffirmed *Hadfield*'s erroneous interpretation of the second sentence of § 7 in *Li v Feldt (After Remand)*, 434 Mich 584, 592-594; 456 NW2d 55 (1990). Justice GRIFFIN, in his opinion concurring in part and dissenting in part, pointed out what *Hadfield*'s plurality and *Li*'s majority missed: "[t]he significance of the Legislature's use of [the terms] 'governmental agencies' in the first sentence of § 7 and 'state' in the second . . . ." *Li, supra* at 598-599. Justice GRIFFIN reasoned:

> A literal reading of the second sentence of § 7 seems, at most, to require an historical analysis of the *state's* common-law immunity. The significance of the Legislature's use of "governmental agencies" in the first sentence and the "state" in the second sentence is underscored by the definitions expressly given those terms in the act. "Governmental agency" is defined as "the state, political subdivisions, and municipal corporations." The "state," on the other hand, is defined as "the state of Michigan and its agencies, departments, [and] commissions . . . ." The terms are not interchangeable. The statutory provision prohibiting modification or restriction of immunity is specifically applied to the "state," a term which does not embrace municipalities and other forms of lower government. Definitions supplied by the Legislature in the statute are binding on the judiciary. Thus, assuming arguendo that the second sentence of § 7 requires an historical analysis, it should be applied to the "state" and not other "governmental agencies." [*Id.* at 598-600.]

He continued:

11

The underlying premise of the *Hadfield* plurality opinion appears to be that the Legislature's intent to make uniform the immunity of all levels of government requires that the historical analysis purportedly required by § 7 applies to all levels of government, despite the express limitation of the purported historical analysis to "the state."

Although the act's title declares its purpose is "to make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments," the uniformity of immunity intended by the Legislature does not necessarily include both governmental and nongovernmental functions. The act's title qualifies the uniformity purpose by providing that the Legislature sought to make uniform the liability of all government *when engaged in the exercise or discharge of a governmental function . . . ."* Simply because the Legislature claimed immunity on behalf of all levels of government "when engaged in the exercise or discharge of a governmental function" does not necessarily compel the conclusion that the state has no immunity when *not* engaged in the exercise or discharge of a governmental function. Indeed, the governmental tort liability act was "'[d]rafted under the apparent assumption that the state and its agencies enjoyed a total sovereign immunity from tort liability . . . .'" Thus, the legislative intent underlying the second sentence of § 7 could merely have been to "affirm" the state's preexisting absolute sovereign immunity, rather than to codify common-law exceptions to governmental immunity. Strict uniformity of immunity among all levels of government is not clearly mandated by § 7. [*Id.* at 600-601 (citation omitted; emphasis in original).]

Justice GRIFFIN worried that the historical approach adopted by the *Hadfield* plurality and reaffirmed by *Li* would "leave[] ajar the door to additional immunity exceptions that cannot be fairly culled from the language of § 7." *Id.* at

12

602. He noted that nothing in the plain language of § 7 indicated a legislative intent to create a nuisance exception to governmental immunity, and concluded:

> In my opinion, the fundamental purposes of the act were to restore immunity to municipalities, grant immunity to all levels of government when engaged in the exercise or discharge of a governmental function, and prevent judicial abrogation of governmental and sovereign immunity. The second sentence of § 7 was merely intended to prevent further erosion of the *state's* common-law immunity, rather than preserve any common-law exceptions to *governmental* immunity. Under this analysis, unless the activity of a municipality falls within one of the five narrowly drawn statutory exceptions, the only question remaining in these cases is whether the activity is a "governmental function," as defined by the Legislature. [*Id.* at 605 (emphasis in original).]

We agree with Justice GRIFFIN's analysis and adopt it today. We hold that while the first sentence of § 7 applies to both municipalities and the state, the clear and unambiguous language of the second sentence of § 7 applies only to the state, as defined in the statute.[1]

## C
### THE TRESPASS-NUISANCE EXCEPTION

Because these cases involve cities, the second sentence

---

[1]Because the state is not involved as a party in these cases, we need not explicate fully the meaning of the second sentence of § 7. We agree with Justice GRIFFIN that, at most, the language of the second sentence requires an historical analysis of the *state's* sovereign immunity, but we have no occasion to undertake such an analysis here. Therefore, contrary to the dissent's assertion, we make no determinations regarding common-law exceptions to the state's governmental immunity.

of § 7 does not apply; any trespass-nuisance exception must therefore come from the first section of § 7. The first sentence provides:

> Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. [MCL 691.1407(1).]

The parties agree that the operation of a sewage system is a governmental function. Thus, under the terms of the statute, municipal corporations are immune from tort liability except as otherwise provided in the act.

The act sets forth five statutory exceptions to governmental immunity: the highway exception, MCL 691.1402; the motor vehicle exception, MCL 691. 1405; the public building exception, MCL 691.1406; the proprietary function exception, MCL 691.1413; and the governmental hospital exception, MCL 691.1407(4). In determining if the statutory exceptions permit a trespass-nuisance exception, we are guided by the principle expressed in *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000): "There is one basic principle that must guide our decision today: the immunity conferred upon governmental agencies is *broad*, and the statutory exceptions thereto are to be *narrowly* construed." (Emphasis in original.)

With this principle in mind, we hold that the plain

14

language of the governmental tort liability act does not contain a trespass-nuisance exception to governmental immunity. Trespass-nuisance simply is not one of the five exceptions to immunity set forth in the governmental tort liability act. As stated above, we are bound by the clear and unambiguous statutory text; we lack constitutional authority to impose on the people of this state our individual policy preferences regarding the availability of lawsuits arising from the operation of a sewage system. We must "seek to faithfully construe and apply those stated public policy choices made by the Legislature" in drafting the governmental tort liability act. *Nawrocki*, *supra* at 151. We are mindful that, because immunity necessarily implies that a "wrong" has occurred, some harm caused by a governmental agency may lack a remedy. *Id.* at 157. Although governmental agencies have many duties regarding the services they provide to the public, a breach of those duties is compensable under the statute only if it falls within one of the statutorily created exceptions.

IV
TITLE-OBJECT CLAUSE

Plaintiffs argue that if the second sentence of § 7 applies only to the state and not to all governmental agencies, it violates the Title-Object Clause, Const 1963, art 4, § 24. We reject this argument.

We note at the outset that "all possible presumptions

15

should be afforded to find constitutionality." *Advisory Opinion re Constitutionality of 1972 PA 294*, 389 Mich 441, 464; 208 NW2d 469 (1973). Const 1963, art 4, § 24 provides in pertinent part:

> No law shall embrace more than one object, which shall be expressed in its title.

This constitutional provision requires that 1) a law must not embrace more than one object, and (2) the object of the law must be expressed in its title. *Livonia v Dep't of Social Services*, 423 Mich 466, 496; 378 NW2d 402 (1985). This constitutional limitation ensures that legislators and the public receive proper notice of legislative content and prevents deceit and subterfuge. *Advisory Opinion*, *supra* at 465. The goal of the clause is notice, not restriction of legislation.

The "object" of a law is defined as its general purpose or aim. *Local No 1644 v Oakwood Hosp Corp*, 367 Mich 79, 91; 116 NW2d 314 (1962). The "one object" provision must be construed reasonably, not in so narrow or technical a manner that the legislative intent is frustrated. *Kuhn v Dep't of Treasury*, 384 Mich 378, 387-388; 183 NW2d 796 (1971). We should not invalidate legislation simply because it contains more than one means of attaining its primary object; "[h]owever, if the act contains 'subjects diverse in their

16

nature, and having no necessary connection,'" it violates the Title-Object Clause. *Livonia*, *supra* at 499. The act may include all matters germane to its object, as well as all provisions that directly relate to, carry out, and implement the principal object. *Advisory Opinion*, *supra* at 465. The statute "may authorize the doing of all things which are in furtherance of the general purpose of the Act without violating the 'one object' limitation of art 4, § 24." *Kuhn*, *supra* at 388. Finally, the constitutional requirement is not that the title refer to every detail of the act; rather, "[i]t is sufficient that 'the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose . . . ." *Livonia*, *supra* at 501 (citations omitted).

The title of the governmental tort liability act provides:

> An act to make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments, officers, employees, and volunteers thereof, and members of certain boards, councils, and task forces *when engaged in the exercise or discharge of a governmental function*, for injuries to property and persons; to define and limit this liability; to define and limit the liability of the state when engaged in a proprietary function; to authorize the purchase of liability insurance to protect against

17

loss arising out of this liability; to provide for defending certain claims made against public officers and paying damages sought or awarded against them; to provide for the legal defense of public officers and employees; to provide for reimbursement of public officers and employees for certain legal expenses; and to repeal certain acts and parts of acts. [Emphasis added.]

Plaintiffs contend that the act would exceed the scope of its title were the second sentence of § 7 construed to allow differentiation between the immunity of the state and the immunity of inferior governmental agencies. We reject this argument. The title of the act only provides that the immunity of all governmental agencies will be made uniform for circumstances involving "the exercise or discharge of a governmental function." This is accomplished by the first sentence of § 7, which confers uniform statutory immunity on all governmental entities engaged in the exercise or discharge of a governmental function. In enacting the second sentence of § 7, the Legislature ensured that, "by restoring to municipal corporations immunity for governmental functions and making uniform the immunity of all governmental entities for governmental functions, it was not thereby waiving the state's common-law absolute sovereign immunity for non-governmental functions . . . ." *Ross*, *supra* at 669 (LEVIN, J., dissenting in part).

In essence, the Legislature defined the scope of the first sentence of § 7 through the second sentence. Such a

limitation cannot be considered a subject diverse in nature that has no necessary connection to the primary object of the act. The limitation in the second sentence is clearly germane, auxiliary, and incidental to the general purpose of the act. Therefore, the act as interpreted does not violate art 4, § 24.

V

STARE DECISIS

We do not lightly overrule precedent. Stare decisis is generally "'the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Robinson*, *supra* at 463, quoting *Hohn v United States*, 524 US 236, 251; 118 S Ct 1969; 141 L Ed 2d 242 (1998). Before we overrule a prior decision, we must be convinced "not merely that the case was wrongly decided, but also that less injury will result from overruling than from following it." *McEvoy v Sault Ste Marie*, 136 Mich 172, 178; 98 NW 1006 (1904).

At the same time, we must also remember that stare decisis is a principle of policy, not an inexorable command. *Robinson*, *supra* at 464. Stare decisis should not be applied mechanically to prevent this Court from overruling erroneous

19

decisions regarding the meaning of a statute. *Id.* at 463. In *Robinson*, *supra* at 464, we set forth four factors that we consider before overruling a prior decision: 1) whether the earlier case was wrongly decided, 2) whether the decision defies "practical workability," 3) whether reliance interests would work an undue hardship, and 4) whether changes in the law or facts no longer justify the questioned decision. In considering the reliance interest, we consider "whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations." *Id.* at 466. Further, we must consider reliance in the context of erroneous statutory interpretation:

> [I]t is well to recall in discussing reliance, when dealing with an area of the law that is statutory, . . . that it is to the words of the statute itself that a citizen first looks for guidance in directing his actions. This is the essence of the rule of law: to know in advance what the rules of society are. Thus, if the words of the statute are clear, the actor should be able to expect, that is, rely, that they will be carried out by all in society, including the courts. In fact, should a court confound those legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest. When that happens, a subsequent court, rather than holding to the distorted reading because of the doctrine of stare decisis, should overrule the earlier court's misconstruction. The reason for this is that the court in distorting the statute was engaged in a form of judicial usurpation that runs counter to the bedrock principle of American constitutionalism, i.e., that the lawmaking power

20

is reposed in the people as reflected in the work of the Legislature, and, absent a constitutional violation, the courts have no legitimacy in overruling or nullifying the people's representatives. Moreover, not only does such a compromising by a court of the citizen's ability to rely on a statute have no constitutional warrant, it can gain no higher pedigree as later courts repeat the error. [*Id.* at 467-468.]

Thus, while too rapid a change in the law threatens judicial legitimacy, correcting past rulings that usurp legislative power *restores* legitimacy. *Id.* at 472-473 (CORRIGAN, J., concurring).

Accordingly, we must shoulder our constitutional duty to act within our grant of authority and honor the intent of the Legislature as reflected in the plain and unambiguous language of the statute. In so doing, we rectify *Hadfield*'s misconstruction of the statutory text.

We are mindful, however, of the effect our decision may have in overruling *Hadfield*'s interpretation of § 7. As this Court noted in *Placek v Sterling Heights*, 405 Mich 638, 665; 275 NW2d 511 (1979), quoting *Williams v Detroit*, 364 Mich 231, 265-266; 111 NW2d 1 (1961):

"This Court has overruled prior precedent many times in the past. In each such instance the Court must take into account the total situation confronting it and seek a just and realistic solution of the problems occasioned by the change."

After taking into account the entire situation confronting the

21

Court, we hold that our decision shall have only prospective application.

Although the general rule is that judicial decisions are given full retroactive effect, *Hyde v Univ of Michigan Bd of Regents*, 426 Mich 223, 240; 393 NW2d 847 (1986), a more flexible approach is warranted where injustice might result from full retroactivity. *Lindsey v Harper Hosp*, 455 Mich 56, 68; 564 NW2d 861 (1997). For example, a holding that overrules settled precedent may properly be limited to prospective application. *Id.* Moreover, the federal constitution does not preclude state courts from determining whether their own law-changing decisions are applied prospectively or retroactively. *Great Northern R Co v Sunburst Oil & Refining Co*, 287 US 358, 364-365; 53 S Ct 145; 77 L Ed 360 (1932).

This Court adopted from *Linkletter v Walker*, 381 US 618; 85 S Ct 1731, 14 L Ed 2d 601 (1965), three factors to be weighed in determining when a decision should not have retroactive application. Those factors are: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice. *People v Hampton*, 384 Mich 669, 674; 187 NW2d 404 (1971). In the civil context, a plurality of this Court noted that *Chevron Oil v Huson*, 404 US 97, 106-

107; 92 S Ct 349; 30 L Ed 2d 296 (1971), recognized an additional threshold question whether the decision clearly established a new principle of law. *Riley v Northland Geriatric Center (After Remand)*, 431 Mich 632, 645-646; 433 NW2d 787 (1988) (GRIFFIN, J.).

We turn first to the threshold question noted in *Riley*. Although this opinion gives effect to the intent of the Legislature that may be reasonably be inferred from the text of the governing statutory provisions, practically speaking our holding is akin to the announcement of a new rule of law, given the erroneous interpretations set forth in *Hadfield* and *Li*. See *Riley, supra*; *Gusler v Fairview Tubular Products*, 412 Mich 270, 298; 315 NW2d 388 (1981).

Application of the three-part test leads to the conclusion that prospective application is appropriate here. First, we consider the purpose of the new rule set forth in this opinion: to correct an error in the interpretation of § 7 of the governmental tort liability act. Prospective application would further this purpose. See *Riley*, *supra* at 646. Second, there has been extensive reliance on *Hadfield*'s interpretation of § 7 of the governmental tort liability act. In addition to reliance by the courts, insurance decisions have undoubtedly been predicated upon this Court's longstanding interpretation of § 7 under *Hadfield*:

municipalities have been encouraged to purchase insurance, while homeowners have been discouraged from doing the same. Prospective application acknowledges that reliance. Third, prospective application minimizes the effect of this decision on the administration of justice. Consideration of recently enacted 2001 PA 222[2] strengthens our determination to limit our holding to prospective application. 2001 PA 222 amends the governmental tort liability act to provide a remedy for damages or physical injuries caused by a sewage disposal system event.[3] Section 17(2) of the act provides, in pertinent part:

> Sections 16 to 19 abrogate common law exceptions, if any, to immunity for the overflow or backup of a sewage disposal system and provide the

---

[2]2001 PA 222 took effect January 2, 2002.

[3]Section 16(k) defines a sewage disposal system event:

"Sewage disposal system event" or "event" means the overflow or backup of a sewage disposal system onto real property. An overflow or backup is not a sewage disposal system event if any of the following was a substantial proximate cause of the overflow or backup:

(i) An obstruction in a service lead that was not caused by a governmental agency.

(ii) A connection to the sewage disposal system on the affected property, including, but not limited to, a sump system, building drain, surface drain, gutter, or downspout.

(iii) An act of war, whether the war is declared or undeclared, or an act of terrorism.

24

sole remedy for obtaining any form of relief for damages or physical injuries caused by a sewage disposal system event regardless of the legal theory.

2001 PA 222 does not contain any language indicating it is meant to apply retroactively, but provides only that it is to take immediate effect. Section 19(1) provides that a claimant is not entitled to compensation under the statute unless the claimant notifies the governmental agency of a claim of damage or physical injury, in writing, within forty-five days after the date the damage or physical injury was or should have been discovered. Only two exceptions to the forty-five-day limit are available: if the claimant notified the contacting agency during the forty-five-day period or if the failure to comply resulted from the contacting agency's failure to comply with notice requirements. Given the absence of any language indicating retroactive effect, the forty-five-day notice limit, and the presumption that statutes operate prospectively,[4] we conclude that 2001 PA 222 does not apply retroactively.

Thus, if we applied our holding in this case retroactively, the plaintiffs in cases currently pending would not be afforded relief under *Hadfield* or 2001 PA 222. Rather,

---

[4]See *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001); *Franks v White Pine Copper Div*, 422 Mich 636, 671; 375 NW2d 715 (1985); *Hughes v Judges' Retirement Bd*, 407 Mich 75, 85; 282 NW2d 160 (1979).

25

they would become a distinct class of litigants denied relief because of an unfortunate circumstance of timing.

Accordingly, this decision will be applied only to cases brought on or after April 2, 2002. In all cases currently pending, the interpretation set forth in *Hadfield* will apply.

## VI
### TAKING CLAUSE

The parties have addressed whether trespass nuisance is not a tort within the meaning of the governmental immunity statute, but rather an unconstitutional taking of property that violates Const 1963, art 10, § 2. The trial courts in these cases have yet to address the taking claims. Therefore, we decline to discuss those claims at this time.

## VII
### CONCLUSION

We hold that the first sentence of § 7, by its plain language, applies to both the state and its municipalities, but that the second sentence of § 7 applies only to the state, as defined in the statute. We overrule precedent holding to the contrary. Further, we hold that the statute as interpreted in this opinion does not violate Const 1963, art 4, § 24. After consideration of the effect of this decision on the administration of justice, we hold that this decision is limited to prospective application.

Finally, we observe that it appears from the record that

the circuit courts may not have addressed all the elements required under *Hadfield* for a claim of trespass-nuisance, including causation, when deciding the motions for summary disposition. Therefore, we remand these cases to the circuit courts to reconsider plaintiffs' motions for summary disposition under *Hadfield,* including the issue of causation. See *Hadfield*, *supra* at 169; *Peterman v Dep't of Natural Resources*, 446 Mich 177, 205, n 42; 521 NW2d 499 (1994).

WEAVER, TAYLOR, YOUNG, and MARKMAN, JJ., concurred with CORRIGAN, C.J.

# STATE OF MICHIGAN

## SUPREME COURT

ROBERT POHUTSKI, AMY POHUTSKI,
KIERK SANDERLIN, JOELLE SANDERLIN,
ALAN BULLION, ANTHONY CORBELL,
PIETRO FUSCO, NORMA FUSCO,
KAYE GARDNER, BEVERLY GARDNER,
SHIRLEY KARAPETOFF, KAREN KEREZI,
BRIAN LaFUENTE, MICHELLE LaFUENTE,
RICHARD REFALKO, DOLORES RAFALKO,
WILLIAM SHAMUS, KATHLEEN SHAMUS,
and all others similarly situated,
a certified class,

    Plaintiffs-Appellees,

v                                   No. 116949

THE CITY OF ALLEN PARK, a Michigan
municipal corporation,

    Defendant-Appellant,

and

JOHN DOE REPRESENTATIVE, EMPLOYEES,
OR AGENTS OF THE CITY OF ALLEN PARK,
jointly and severally.

_____

JEANNE JONES, JAMES JONES, ROGER TROST,
CAROL TROST, MIKE ROBERT, MIKE BARTHLOW,
CINDY BARTHLOW, SUSAN BROWN,
KENNETH BROWN, SHIRLEY BRYANT,
DAVID BURHANS, MAGDALENA CHAVEZ,
WILLIAM CHUNN, IVAN GADJEV,
FLORENCE GADJEV, REX GLASSON,
BARBARA GLASSON, KEVIN HALL,
SONIA HALL, LON HAMILTON,

DIANE HAMILTON, WILLIAM HATTON,
ELIZABETH HATTON, BILL HOFSESS,
JOAN HOFSESS, JAMES HUBBLE,
VIRGINIA HUBBLE, SOUREN MERUCCI,
ENERA MERUCCI, MARY PEGORARO,
PHIL PEGORARO, LUIS PERESSINI,
MICHAL ALLEN PETERS, MIGUEL PRIETO,
JILL PRIETO, TODD SNIDER, BETTY ZAHER,
and all other similarly situated,

    Plaintiffs-Appellees,

v                                   No. 117935

CITY OF FARMINGTON HILLS,
a Michigan municipal
corporation, and JOHN DOE
REPRESENTATIVES, EMPLOYEES,
OR AGENTS OF THE CITY OF
FARMINGTON HILLS, jointly and severally,

    Defendants-Appellants.

_____

KELLY, J. (*dissenting*).

    The majority's decision today overrules many years of Michigan jurisprudence interpreting the government tort liability act (GTLA). Its rationale for upsetting the well-reasoned precedent of this Court is that it brings the statute's construction closer to the Legislature's intent. I find this patently inaccurate.

    Repeatedly, beginning with the decision in *Ross v Consumers Power (On Rehearing),*[1] this Court has construed the GTLA each time by scrutinizing the language and the purpose the Legislature articulated for it. Using a consistent approach, I conclude that the trespass-nuisance exception still exists

---

[1] **420 Mich 567; 363 NW2d 641 (1984).**

2

and that it applies to municipal units of government.  I would hold, as well, that the trespass-nuisance cause of action is constitutionally derived and unaffected by legislative action.

## I.  INTERPRETATION OF THE GOVERNMENT TORT LIABILITY ACT

Whenever a court interprets a statute, it attempts to ascertain and fulfill the Legislature's intent in passing it. *Reardon v Dep't of Mental Health*, 430 Mich 398, 407; 424 NW2d 248 (1998).  It seeks to identify the object of the statute and the harm it was designed to remedy.  It endeavors to make a construction that is at once reasonable and analyzed so as best to accomplish the purposes of the statute.  *Marquis v Hartford Accident & Indemnity Co*, 444 Mich 638; 513 NW2d 799 (1994).   It construes the statute's provisions not in isolation, but in context.  *Sun Valley Foods Co v Ward*, 460 Mich 230; 596 NW2d 119 (1999).

Having applied these principles, I conclude, as did the Court in *Hadfield v Oakland Co Drain Comm'rs*,[2] that if the Legislature had meant to abolish the trespass-nuisance exception, it would have stated so unequivocally.

The Legislature enacted the GTLA in 1965 as a response to *Williams v Detroit*,[3] a decision in which this Court abrogated governmental immunity for municipalities.  The Court was evenly divided concerning whether common-law governmental

---

[2]430 Mich 139, 148; 422 NW2d 205 (1988).

[3]364 Mich 231; 111 NW2d 1 (1961).

3

immunity existed.  However, a majority agreed that municipal units of government are not immune from liability.  *Id.* at 270.  As a consequence of *Williams*, governmental entities in general retained their common-law immunity, while municipalities did not.

The title of the GTLA reads as follows:

> An act to make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments, officers, employees, and volunteers thereof, and members of certain boards, councils, and task forces when engaged in the exercise or discharge of a governmental function, for injuries to property and persons . . . .  [MCL 691.1401 *et seq.*, cited in *Ross, supra* at 593.]

The language is unequivocal.  It expresses an intent to reestablish and codify a consistent and uniform form of governmental immunity, restoring the shield to municipal governments while in the exercise of a governmental function. After detailing some statutory exceptions to immunity, § 7 of the statute states:

> Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the governmental agency is engaged in the exercise or discharge of a governmental function.  Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed. [MCL 691.1407(1).]

In the cases before us today, the defendants argue that the word "state" in the second sentence of § 7 bars common-law exceptions to immunity for "all governmental agencies."  The

**4**

majority goes further, holding that there were no common-law exceptions to even the state's governmental immunity.[4]

I disagree with the former and dissent from the latter. With respect to the former, *Ross* shows that the word "state" must be read consistently with the creation of a uniform system of immunity between municipal, local, and state governments. With respect to the latter, *Hadfield* confirmed that common-law exceptions existed that did survive the enactment of the GTLA.

A. *Ross v Consumers Power Co*

The *Ross* decision dealt with the use of the word "state" in the GTLA. It held that its placement there presented a clear conflict with the purpose and title of the act. We faced the same dilemma over § 13[5] of the act. That section also used the word "state" to describe immunity:

> The immunity of the state shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function . . . [Former MCL 691.1413, as enacted by 1964 PA 170.]

---

[4]**The majority states that it makes no ruling with regard to the state's immunity. However, when it tries to resolve a conflict between its interpretation of § 7 and the Title-Object Clause, Const 1963, art 4, § 24, it interprets § 7 as reserving exceptions only to the state's sovereign immunity. Under that interpretation, no sentence in the GTLA reserves common-law exceptions to the governmental function immunity of the state. Therefore, while the state is not a party to this action, the majority opinion still carries serious implications for the state's sovereign immunity.**

[5]**MCL 691.1413.**

5

The Court took the exception for "the state" and applied it to all governmental entities. It rejected the plain meaning of § 13 because, so read, it would have limited the proprietary function exception to the state and its agencies, departments, and commissions. The Court declined to find that restriction in the act because it was clearly not what the Legislature intended. It observed:

> The governmental immunity act was intended to provide uniform liability and immunity to both state and local governmental agencies. A strict "expressio unius est exclusio alterius" reading of § 13 would destroy this uniformity. [*Ross, supra* at 614.]

The Court concluded that restricting § 13 to state government would run contrary to the goal and intent of the act, namely, a uniform system of liability and immunity. Moreover, it would abolish a longstanding exception to common-law immunity without the presence of any clear indications of legislative intent to do so. The Legislature codified this Court's reading of § 13 of the act two years later by substituting the words "governmental agency" for the word "state."

## B. *HADFIELD V OAKLAND CO DRAIN COMM'R*

Two years after the Legislature effectively ratified *Ross's* interpretation of § 13, the Court decided *Hadfield, supra.* It found that the Legislature had used "state" in § 7, as it had in § 13, to mean "governmental agency." The defendant in *Hadfield* argued that there were no common-law exceptions to governmental immunity under the statute.

6

Once again, the Court saw a conflict between the language of the statute, legislative intent, and an historic immunity exception. It concluded:

> While the defendant's arguments, advocating recognition of only statutory exceptions [to governmental immunity], are temptingly simple and straightforward, they negate or ignore the second half of the legislative mandate of § 7. That section requires a continuation of the nuisance exception as formulated prior to the enactment of the governmental immunity act in 1964 . . . . [*Id.* at 149.]

The Court rejected the defendant's argument using this reasoning: The second sentence of § 7 requires that the state's governmental immunity remain as it existed before July 1, 1965. The trespass-nuisance exception is strongly rooted in Michigan's history. Nothing in the expressions of the Legislature indicated an intention to change it.

Today's holding discards the conclusion in *Hadfield* by reinterpreting the second sentence of § 7 as an expansion of sovereign immunity. I strenuously disagree with this newfound purpose for the statute. Both the first sentence and the second sentence of § 7 use the words "tort liability." Therefore, the type of liability and immunity the Legislature intended in the first sentence, it also intended in the second. According to the second sentence, the immunity from liability was not to be modified or expanded from what existed under the common law.

That reasoning, coupled with the intention to create a uniform system that we found in *Ross*, leads to one conclusion

**7**

only:  the Legislature meant to keep the state's sovereign immunity where it was before July 1965, preventing its expansion or erosion, and to extend it uniformly to all other governmental entities.  The common-law exception of trespass-nuisance thus would have survived.

C.  LEGISLATIVE CONFIRMATION OF THE EXCEPTION

This year the Legislature enacted 2001 PA 222,[6] which added §§ 16 through 19 to the GTLA.  MCL 691.1416 to 691.1419.  The new act creates a mechanism for local governmental units to make compensation when a defect in a sewer system causes the type of damage complained of here.  Section 17 states:

> Sections 16 to 19 abrogate common law exceptions, if any, to immunity for the overflow or backup of a sewage disposal system and provide the sole remedy for obtaining any form of relief for damages or physical injuries caused by a sewage disposal system event regardless of the legal theory.  [MCL 691.1417(2).]

This language acknowledges that there are or, at least, may be common-law exceptions to governmental immunity.  Given the intent and the timing of the act, it is apparent that the Legislature sought to prevent this Court from barring homeowner suits for damages.

2001 PA 222 is not alone in acknowledging the likely existence of common-law exceptions to governmental immunity.  The Legislature also suggests their existence in § 7a of the GTLA, which it passed in anticipation of Year 2000 computer

---

[6] **The act was signed by the Governor after oral arguments were made in this case.**

8

failures.

> Except as . . . provided in . . . Section 13, a political subdivision other than a municipal corporation engaged in the exercise or discharge of a governmental function is immune from liability in an action to recover damages resulting directly or indirectly from a computer failure, including, but not limited to . . . an action based on section 2, 3, 5, 6, or 7.  [MCL 691.1407a(1).]

This language indicates that an action to recover damages could be founded on § 7, a section that the majority believes is merely an assertion of state immunity.  Section 7a of the GTLA and 2001 PA 222, in conjunction with the legislative intent described in *Ross* and *Hadfield,* are convincing evidence that the Legislature did not abrogate common-law exceptions to immunity with § 7.

### D.  SCOPE OF TITLE

The majority's treatment of the Title-Object Clause[7] in the state constitution omits the significance of the title of the GTLA as a key indicator of the Legislature's intent.

Since Justice COOLEY's time, the clause has been applied to insure that adequate notice of new legislation be given to the general public and to those affected by it.  *Maki v East Tawas,* 385 Mich 151, 156-158; 188 NW2d 593 (1971).  To accomplish that end and to avoid deception and subterfuge, the clause requires that the scope of all legislation must fall within the scope of its title.  *Id., Kurtz v People*, 33 Mich 279, 281 (1876).  In addition, the clause requires that no law

---

[7]**Const 1963, art 4, § 24.**

embrace more than one object, which must be expressed in the title.

The title of the GTLA indicates a desire for a "uniform" system of liability. However, the majority's construction of § 7 of the act accomplishes the opposite. The majority examines the differences between sovereign and governmental function immunity. It then concludes that, under its reading of the act, the system will be uniform as regards governmental function immunity. It finds that reaffirmation of sovereign immunity was incidental to the purpose of the act.

I disagree. If the first sentence of § 7 codifies a consistent governmental function immunity and the second reaffirms the state's sovereign immunity, the second sentence falls outside the requirements of the Title-Object Clause. It is beyond the scope of the act's title to "affirm" and codify the state's common-law sovereign immunity, because the title refers only to an immunity enjoyed "when engaged in the discharge of governmental function." MCL 691.1401 *et seq*. It is also beyond the act's scope to allow different governmental immunity at different levels of government, as the majority finds it does.

The *Ross* and *Hadfield* decisions construed the act in a way that does not violate the Title-Object Clause. The *Ross* Court held that § 7 uses the expression "sovereign immunity" to include governmental functions. The expression was the tool by which the Legislature made all immunity uniform when

**10**

a unit of government was performing a governmental function. Under this interpretation, the affirmation of sovereign immunity is germane to the creation of a uniform system of liability and immunity.

## II. THE CONSTITUTIONAL BASIS FOR

### THE TRESPASS-NUISANCE EXCEPTION

Overlooked in the majority's analysis of the Legislature's intent is whether the trespass-nuisance exception enjoys a constitutional basis that defeats a statutory grant of governmental immunity. The majority treats the question as part of the plaintiffs' taking claim that has yet to be adjudicated below.

I believe that it is preferable to address the question here, than wait for the matter to return to us. I believe that the common-law cause of action of trespass-nuisance is based on the Taking Clause of the Michigan Constitution[8] and, as a consequence, statutory governmental immunity is not a defense. *Li v Feldt* (*After Remand*), 434 Mich 584, 594, n 10; 456 NW2d 55 (1990).

This Court in *Buckeye Union Fire Ins Co v Michigan*[9] acknowledged that the trespass-nuisance exception has a constitutional basis. Governmental immunity is not a defense to a constitutional tort claim, hence not to a claim based on

---

[8]**Const 1963, art 10, § 2.**

[9]**383 Mich 630; 178 NW2d 476 (1970).**

**11**

trespass-nuisance. *Thom v State Hwy Comm'r*, 376 Mich 608, 628; 138 NW2d 322 (1965). The claim survives despite the fact that a statutory exception is not present because the law views the trespass or nuisance as an appropriation of property rights. Taylor, Googasian & Falk, Torts, § 7:252, p 7-86.

Not even the state can intrude on a citizen's lawful possession of his property. *Ashley v Port Huron*, 35 Mich 296, 300 (1877); *Herro v Chippewa Co Rd Comm'rs*, 368 Mich 263, 272; 118 NW2d 271 (1962). And the protection of one's property rights is not accomplished solely through actions for eminent domain. One may sue under the Taking Clause.

Also, actions under the clause are not limited to claims alleging an absolute conversion of property. *Pearsall v Supervisors*, 74 Mich 558; 42 NW 77 (1889). The action of a governmental agency may constitute a taking when it interferes with, damages, or destroys the property of an individual. *Buckeye, supra* at 642.

Since 1860, this Court has relied on the Taking Clause to support actions for trespass-nuisance. This Court has held many times that an invasion by government-controlled waters or sewage creates a cause of action against which governmental immunity is not a bar.[10]

---

[10]See *Pennoyer v Saginaw*, 8 Mich 534 (1860); *Sheldon v Kalamazoo*, 24 Mich 383 (1872); *Ashley, supra* at 296; *Defer v Detroit*, 67 Mich 346, 349; 34 NW 680 (1887); *Rice v Flint*, 67 Mich 401, 403; 34 NW 719 (1887); *Vanderlip v Grand Rapids*, 73
(continued...)

On the basis of that long-established precedent, I would hold that a trespass-nuisance cause of action is constitutionally based and cannot be abrogated by the Legislature. The actions of the defendants here in flooding the plaintiffs' basements constitute a "taking," and damages, if proven, should be available. The basis for recovery is that the government deprived plaintiffs of the useful possession of property that they own. *Gerzeski v Dep't of State Hwys*, 403 Mich 149, 170; 268 NW2d 525 (1978).

III. APPLICATION OF THE TRESPASS-NUISANCE EXCEPTION

Trespass-nuisance refers to a "trespass or interference with the use or enjoyment of land caused by a physical intrusion that is set in motion by the government or its agents and result[s] in personal or property damage." *Continental Paper & Supply Co v Detroit*, 451 Mich 162, 164; 545 NW2d 657 (1996). Its elements are (1) the existence of a condition, such as a nuisance or a trespass, (2) a cause, such as a physical intrusion, and (3) causation or control, as by government. *Id.*

---

[10](...continued)
Mich 522, 535; 41 NW 677 (1889); *Seaman v Marshall*, 116 Mich 327, 329-330; 74 NW 484 (1898); *Ferris v Detroit Bd of Ed*, 122 Mich 315, 318; 81 NW 98 (1899); *McAskill v Hancock Twp*, 129 Mich 74, 78-79; 88 NW 78 (1901); *Onen v Herkimer*, 172 Mich 593, 598; 138 NW 198 (1912); *Attorney General v Grand Rapids*, 175 Mich 503, 534; 141 NW 890 (1913); *Donaldson v City of Marshall*, 247 Mich 357, 359; 225 NW 529 (1929); *Robinson v Wyoming Twp*, 312 Mich 14, 23; 19 NW2d 469 (1945); *Defnet v Detroit*, 327 Mich 254, 258; 41 NW2d 539 (1950).

In both cases before us, plaintiffs' basements have been flooded by discarded water[11] that entered through drains hooked up to the municipal sewer system. The nature of this intrusion is similar to that found in *CS&P, Inc v Midland*, 229 Mich App 141, 145; 580 NW2d 468 (1998). There, water and sewage flowed into the plaintiff's commercial suite from its floor drains and toilets. The Court of Appeals found that a trespass-nuisance cause of action existed. A cause should be found to exist in the cases before us, given the similarity of facts.

IV. CONCLUSION

The majority finds that the trespass-nuisance exception to governmental immunity ended in 1965 with passage of the GTLA. I disagree with its conclusion because of subsequent judicial precedent upholding the exception and the lack of clear legislative intent to alter it. Moreover, any legislative attempt to remove the trespass-nuisance exception must be found invalid because a cause of action under the exception is constitutionally based in the Taking Clause.

In making its ruling, the majority discards longstanding and well-reasoned precedent of this Court in order to make its own interpretation of a Michigan statute.[12] It does so,

_____

[11]**Defendant disputes whether all the homes in question were flooded by debris-carrying sewage.**

[12]**See *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143; 615 NW2d 702 (2000) (KELLY, J., concurring in part and dissenting in (continued...)**

stating an obligation to "shoulder [its] constitutional duty to act within [its] grant of authority and honor the intent of the Legislature . . ." and to "rectify . . . [past] misconstruction of the statutory text."  Slip op at 22-23.

But what must be apparent to all, when the rhetoric is stripped of its gloss, is that this Court is again ignoring its own past rulings.  And, if each successive Court, believing its reading is correct and past readings wrong, rejects precedent, then the law will fluctuate from year to year, rendering our jurisprudence dangerously unstable.

The majority's decision to limit its interpretation of the statute to prospective use is little more than a furnishing of salve to stem a hemorrhage. For all the above reasons, I respectfully dissent.

CAVANAGH, J., concurred with KELLY, J.

---

[12](...continued)
part).